[No. 503. August 9, 1892.]

## FREDERICK FAULKNER, PLAINTIFF IN ERROR, V. TERRITORY OF NEW MEXICO, DEFENDANT IN ERROR.

CRIMINAL LAW—MURDER—EVIDENCE—VERDICT.—In a prosecution, on indictment, for murder in the first degree, where the only evidence offered for the defense was the testimony of the accused, which was contradictory and evasive, and the evidence for the prosecution was such that the jury could not escape the conclusion, beyond a reasonable doubt, of the guilt of the defendant, unless they refused to believe the testimony of the witnesses for the territory, they were justified, as the judges of the credibility of the witnesses, in returning a verdict of conviction.

ID.—CONTINUANCE—SECTION 2051, COMPILED LAWS, 1884.—A motion for a continuance, made on the thirteenth day of the term, on the ground that it was not made earlier, because the defendant "hoped to obtain the necessary testimony," stated a conclusion and not a fact such as contemplated by section 2051, Compiled Laws, requiring such motions to be made on the second day of the term, and, if after that day of the term, that they shall state facts constituting an excuse for such delay.

ID.—CONTINUANCE—AFFIDAVIT—SECTION 2049, COMPILED LAWS, 1884.—A motion for a continuance, alleging that defendant had been unable to obtain testimony to show that he was nearly all his life unbalanced; that he had been in three different insane asylums; that he had been unable to learn the address of his relatives, in order to secure their assistance in obtaining a copy of the records of the asylums showing he had been confined there; that such testimony was necessary to show that affiant was wholly insane and irresponsible for his acts, and that he was unable to go to trial without the testimony of the wardens of such asylums, who would testify to the fact of his insanity,—was not sufficient: First. Because it was not shown wherein the copies of the records of such asylums would be legally competent. Second. Because the statement as to the other testimony was not such a statement of facts as could legally go to the jury, and which the prosecution could admit. Third. Because the affiant did not allege facts to show that he was insane at the time of the commission of the crime. Fourth. Because no facts were alleged as to defendant's insanity, to which the wardens of such asylums could testify, as required by section 2049, Compiled Laws.

ID.—COMPULSORY PROCESS FOR ATTENDANCE OF WITNESSES—PRESUMPTION.—Where it does not appear from the record that defendant asked for compulsory process to compel the attendance of witnesses, it will not be presumed that such process was refused.

ID.—MURDER—INSTRUCTIONS—SECTION 2054, COMPILED LAWS, 1884—CONSTRUCTION OF STATUTES.—Section 2054, Compiled Laws, making it the duty of the trial judge in all cases to instruct the jury as to the law of the case, does not require the court to give instructions as to murder in the second and third degrees where the evidence only shows murder in the first degree. The statute refers solely to the case as made by the evidence.

ID.—MURDER—PLEA, INSANITY—BURDEN OF PROOF.—On a prosecution for murder, where the defense was insanity, the burden of proof was on defendant to introduce sufficient evidence to at least produce in the minds of the jury a reasonable doubt as to his sanity and guilt.

ID.—MURDER—REASONABLE DOUBT—INSTRUCTIONS.—An instruction in such case, that the law does not require the jury to be satisfied, beyond a reasonable doubt, of each link in the chain of circumstances relied on to establish defendant's guilt, that it was sufficient to warrant such conviction if the jury, taking the testimony altogether, were satisfied beyond a reasonable doubt that defendant was guilty, was a proper instruction, under the evidence, and not misleading.

ID.—TESTIMONY OF DEFENDANT—INSTRUCTIONS.—Nor was it error for the court to instruct the jury, in such case, where the defendant testified in his own behalf, that they might take into consideration defendant's special interest in the case, in determining what weight should be given his testimony.

ID.—IMPEACHMENT OF WITNESS—INSTRUCTIONS.—In such case, a charge to the jury that one of the modes of impeaching a witness was to show that the witness had, at other times and places, made different statements from those made on the witness stand, and that if they believed the witness had done so, as to any material matter, it was their exclusive province to determine to what extent such fact tended to impeach his memory or credibility, or detracted from the weight which might otherwise be given to his testimony, was also a proper charge, and without prejudice to defendant. Territory v. Romine, 2 N. M. 114.

ID.—NEWLY DISCOVERED EVIDENCE—NEW TRIAL.—On a motion for new trial on the ground of newly discovered testimony, where the testimony, if it had been produced, would only have tended to contradict the witness, and his testimony might have been dispensed with, and still have left sufficient to justify the verdict, the court did not err in refusing to grant the application.

ERROR, from a judgment convicting defendant of murder in the first degree, to the Fourth Judicial District Court, San Miguel County.

The facts are stated in the opinion of the court.

J. LEAHEY and MIGUEL SALAZAR for plaintiff in error.

The court erred in overruling the motion for a continuance. Comp. Laws, N. M., sec. 184. See, also, secs. 1847, 2049, 2050, Comp. Laws, N. M.; Territory v. Kinney, 3 N. M. (Gil.) 657; Territory v. Davis, 10 Arizona Rep. 359; 7 Mass. 205; People v. Lee, 8 Cal. 685.

. If the district court erroneously refuses a continuance, a bill of exceptions must be taken. Leroy Cotton v. State, 32 Tex. 615.

The court erred in refusing defendant an opportunity to obtain process to compel the attendance of witnesses in his behalf. Comp. Laws, N. M., sec. 673; State v. Lurch, 5 Oregon, 408.

The court erred in omitting to instruct the jury fully as to the law of the case. Comp. Laws, N. M.; sec. 2054.

. The court erred in failing to charge the jury as to the law of the case applicable to murder in the second degree. Session Laws, 1891, chap. 80, sec. 5.

The instructions given failed to state the law in its application to the facts correctly and fully. Crawford v. State, 4 Caldwell (Tenn.), 190; Keener v. State, 18 Ga. 194; State v. Brainard, 25 Iowa, 572; Stewart v. State, 1 Ohio, 66; Brown v. State, 23 Tex. 195; Anderson v. State, 1 Tex. App. 730.

Where there are different degrees of an offense, the law of each degree, which the evidence tends to prove, should be given. Washington v. State, 36 Ga. 222; Williams v. State, 2 Tex. App. 271;

State v. Bryant, 55 Mo. 75; State v. Conley, 39 Me. 78; Foster v. People, 50 N. Y. 598; Hudson v. State, 40 Tex. 12; People v. Quincy, 8 Cal. 89; O'Connell v. State, 18 Tex. 343; People v. Byrnes, 30 Cal. 206; People v. Dunn, 1 Idaho, 75; Territory v. Nichols, 3 N. M. (Gil.) 104.

The general terms in which the instructions were given were calculated to mislead the jury by inducing them to suppose that the form of the indictment was such as would authorize a conviction of murder in the first degree only. Beaudien v. State, 8 Ohio St. 634–637.

An instruction which is wrong can not be corrected by an instruction which is right. Achy v. State, 64 Ind. 57–61.

The court must submit to the jury the consideration of every degree of the crime charged, and the exclusion of any grade is reversible error. Territory v. Nichols, 3 N. N. (Gil.) 104.

The court should instruct the jury what circumstances will, in law, reduce a homicide from murder to manslaughter, and leave them to apply the law to the facts in evidence. People v. Culloghn, 6 Pac. Rep. 49.

The court erred and misled the jury in giving the only two grounds mentioned, and then charging them that "in all other cases such killing is criminal and felonious." Beaudien v. State, 8 Ohio St. 634; Moria v. State, 28 Tex. 698; May v. People, 8 Col. 217; State v. Achy, 64 Ind. 59; Cotton v. State, 32 Tex. 615, 626; State v. Floyd, 6 Jones (N. C.), 392; Bonie v. State, 19 Ga. 1; State v. Johnson, 3 Jones (N. C.), 266.

It is no answer to the objection that an erroneous instruction was given for the prosecution to show that in another part of the charge, another instruction was given in which the law was correctly stated. People v. Bush, 3 Pac. Rep. (Cal.) 590.

Misleading instructions to the prejudice of the party complaining are sufficient to set aside the verdict. Missouri Pacific R'y Co. v. Pierce, 5 Pac. Rep. 378.

The burden of proof in a criminal case is always upon the state, and never shifts from the state to defendant, and the making out of a prima facie case against the defendant does not shift the burden to the defendant. State v. Mahn, 25 Kan. 186.

If testimony be introduced tending to show the insanity of the accused, then the burden of proof is upon the state to show his sanity. State v. Reddick, 7 Kan. 152; State v. Nixon, 32 Id. 213; Guetig v. State, 66 Ind. 105; Leache v. State, 22 Tex. App. 279; Walker v. State, 102 Ind. 502, 508; Burkhard v. State, 18 Tex. App. 599, 622; Emery v. Hoyt, 46 Ill. 258.

Sanity is presumed, but when insanity is once established it is presumed to continue. Leache v. State, Tex. App. 1886.

Where the defendant sets up that he was insane about the time the act was committed, he declares that he had no criminal intent, which is an indispensable element in every offense. 1 Bish. Crim. Law, secs. 375, 381; see, also, Id., secs. 301–310, 366, 367.

The doctrine is now becoming general that insanity is not an issue by itself, but like any other matter in rebuttal, it is involved in the plea of not guilty, upon which the burden of proof is on the prosecution. 1 Bish. Crim. Proc., secs. 1050, 1051; Wright v. People, 4 Neb. 407; State v. Smith, 53 Mo. 267; State v. Crawford, 11 Kan. 32.

In cases depending upon circumstantial evidence, in order to warrant a jury in convicting, they must be satisfied, beyond a reasonable doubt, of every essential fact or circumstance necessary to the conclusion of guilt. Bressler v. People, 3 N. E. Rep. 522, 528; Lehman, 18 Tex. App. 174; see, also, Stark, Ev.

[9 Am. Ed.], sec. 856; Scott v. State, 19 Tex. App. 325; Burrill's Cir. Ev., 733; Com. v. Webster, 5 Cush. (Mass.) 295, 317; Sumner v. State, 5 Black. (Ind.) 579; People v. Phipps, 39 Cal. 326, 333; People v. Anthony, 56 Id. 397, 400; Johnson v. State, 18 Tex. App. 385, 398; Clair v. People, 10 Pac. Rep. (Col.) 799.

The metaphor of the "chain" in instructions, taken in connection with the remainder of the instructions and the evidence, is inaccurate and misleading. Leonard v. Territory, 7 Wash. Ter. 872, 878; Marion v. State, 20 N. W. Rep. 290, 294, 16 Neb. 359, 394; Clair v. People, 9 Col. 122, 123.

The court erred in its instruction casting discredit upon the testimony of the accused. Com. v. Pease, 137 Mass. 576; Buckley v. State, 62 Miss. 705; Hogsett v. State, 40 Miss. 522; see, also, Wright v. Com. of Ky., 2 S. W. Rep. 905; People v. Petmecky, 99 N. Y. 415, 421; Anderson v. State, 104 Ind. 467, 472.

It is not the law, even in civil cases, that the testimony of a party must be corroborated in order to be believed by the jury. Prowattain v. Tindall, 80 Pa. St. 295; Buckley v. State, 62 Miss. 705, 706; Hartford v. State, 96 Ind. 461, 466; Pratt v. State, 56 Ind. 179; Unruh v. State, 105 Id. 117, 123; Bird v. State, 107 Id. 154; People v. Arnold, 40 Mich. 710; Comp. Laws, N. M., sec. 2493.

The court erred in admitting extra judicial statements and admissions made by defendant, who afterward, on the trial, testified that he was innocent. Harmon v. State, 3 Tex. App. 51; Com. v. Williams, 105 Mass. 62, 68; see, also, People v. Barrie, 49 Cal. 342; Beery v. United States, 2 Col. 186; State v. Grant, 22 Me. 171; Com. v. Chabbock, 1 Mass. 144; People v. McMahon, 15 N. Y. 384, 386; State v. Staley, 14 Minn. 105; Barnes v. State, 36 Tex. 356; State v. Phelps, 11 Vt. 116, 121; Price v. State, 18 Ohio St.

418; State v. Wentworth, 37 N. H. 196, 218; Miller v. People, 39 Ill. 457; State v. Freeman, 12 Ind. 100; Com. v. Mitchell, 117 Mass. 431.

It is the duty of the court whenever the verdict is against the weight or preponderance of the evidence to set it aside and grant a new trial. Union Pacific R. R. v. Diehl, 6 Pac. Rep. 566; Daily v. State, 10 Ind. 536; Roach v. Gilmer, 4 Pac. Rep. 221.

It is a well established rule of law that evidence discovered since the trial, which was not produced before from any lack of diligence, and which is relevant and material, and not cumulative, or introduced for the purpose of impeaching a witness, is ground for new trial. People v. Corty, 3 Pac. Rep. (Cal.) 609; Lindley v. State, 11 Tex. App. 283; Turnley v. Evans, 3 Humph. (Tenn.) 222; Smith v. Matthews, 6 Mo. 600; Com. v. Williams, 2 Ashm. (Pa.) 69; Ables v. Donley, 8 Tex. 331; Grace v. McArthur, 76 Wis. 644; Wilcox Silver P. Co. v. Barclay, 48 Hun (N. Y.), 54; Morse v. State, 108 Ind. 599.

Of late new trials are liberally granted in furtherance of justice, and should be awarded more freely in criminal than in civil cases. State v. Tomlinson, 11 Iowa, 401; Owens v. State, 35 Tex. 361; see, also, Falk v. People, 42 Ill. 331; Landers v. State, 35 Tex. 359.

EDWARD L. BARTLETT, solicitor general, and L. C. FORT, district attorney, for territory.

SEEDS, J.—The plaintiff in error was tried at the last April term of the San Miguel district court upon an indictment, found by the grand jury of Colfax county, charging him with murder in the first degree. The jury found him guilty, and, in accordance with the law, the court adjudged him to suffer death by hanging. From the judgment of that court he has appealed to this court, and it now becomes our duty to pass upon the errors which he has assigned and urged

upon us as a reason for the reversal of that judgment.
It will be necessary to state somewhat fully the facts
as shown by the record and the bill of exceptions in
order to appreciate the assignment of errors which he
has made.   He was indicted by a grand jury of Colfax
county upon the twenty-fifth of March, 1892, for the
murder of one James Lannon in that county upon
August 9, 1891.   Upon the following day, to wit,
March 26, 1892, he was arraigned in open court, and,
stating that he was too poor to procure counsel, the
court appointed M. Salazar, Esq., and J. Leahy, Esq.,
to defend him.   He then admitted that his true name
was "Frederick Faulkner" instead of "Frank Woods"
or "Frank Decker."   On the twenty-eighth of March
he came into court, attended by his counsel, and
pleaded not guilty.   At the same time he asked for a
change of venue because of the local prejudice, which
was granted, and his case was sent to San Miguel
county for the April term of the district court, and set
for trial on the third Monday of that term, which was
the eighteenth day of April.   Upon that day, it being
the thirteenth day of the term, and the day set for his
trial, he came into court, attended by his counsel, and
made application for a continuance upon various
grounds.   The court took the application under imme-
diate consideration, and denied it.   The jury was
impaneled, and the evidence submitted, and on the
nineteenth day of April the jury returned their verdict
of guilty, as charged.   On the twentieth of April the
defendant filed his motion for a new trial, assigning
six classes of errors, as reasons for granting the same.
The motion was denied.   A motion in arrest of judg-
ment was then made and overruled, whereupon the
court passed sentence of death.

   If the evidence introduced upon the part of the
territory, as exhibited by the bill of exceptions, was

legally before the jury, then it proved the following state of facts: That on or about the first of August, 1891, the defendant and a man by the name of James Lannon were in Trinidad, Colorado; that the man (James Lannon) was possessed of two fair sized sorrel horses, a wagon, and some camping utensils, and also some money; that the defendant was in search of work; that about the seventh of August the defendant left Trinidad in the company of a man answering to the description of James Lannon, in a wagon, with a camping outfit, and drawn by two sorrel or gray horses; that on or about the night of the seventh of August two persons were seen camping upon the Trinchera, a small river in Colfax county, New Mexico, and that they had with them two gray horses, but the size was not positively stated; that upon the next day, near this place, but a few paces away in the bushes, where the two persons were seen camping with the gray horses, was found a dead man wrapped up in a blanket, and bound with wire; that the back part of his head was mashed in, as if with a blunt instrument, while there were two gashes upon either side of his face, as though made by the blade of an ax. A few feet away was found an ax with blood upon the handle, and upon a trial it was found that the ax blade fitted perfectly into the gashes upon the face. The description of the dead man, as far as it went, though not very minute, answered to that of the man Lannon. Upon the day the dead man was found, and early in the morning, the defendant was seen in Folsom, Colfax county, New Mexico, some twelve or thirteen miles from the place where the dead man was found, and he had in his possession a team of sorrel or gray horses, with a lumber wagon and camping outfit. Upon the night of the following day the defendant was arrested in Colorado, about one hundred and fifty miles from the place where the man was found dead. He was camping, and

MURDER: evidence: verdict.

had with him the team of sorrel horses, the wagon, and the camping outfit.   There were also found in the wagon two valises, from one of which were taken a postal card and letters.   The postal card was addressed to James Lannon.   The defendant claimed to the officers who arrested him that he had bought the team and wagon, and the owner had given him a bill of sale for the same, but that he had sent it to his mother, and had forgotten the name of the vendor.   He told the officer further that he had left Trinidad with an old gentleman, and that they had camped together "there" that night, and that he had slept on the one side of the wagon and the old gentleman upon the other, and that two Mexicans came there, and camped with them, and that the next morning they presented a Winchester at him, and told him to hitch up the team and pull out, and that he supposed the old gentleman was killed. · On the thirteenth of August the defendant was brought before a justice at Folsom, and there waived examination, but, in answer to questions which were propounded to him by the justice, said that he did not know the man's name; that he did know it, but had forgotten it.   He said that "he was present when the man was killed; that a lot of Mexicans came there in the morning when he was hitching up, putting the harnesses on the horses, and the first thing he knew the old man was dead, and they throwed down their guns on · him, and told him to leave the country just as fast as 'he could."   Sometime after this there was an examination before another justice at Springer, in Colfax county, of one Bob Carr, accused of the murder of the man Lannon.   The defendant herein was the prosecuting witness for the territory, and there testified substantially as follows, as testified to by a witness who heard him in that case:   He said that his name was Woods.   "He said that he and this old man, Lannon, went into camp that evening on the Trinchera, New

Mexico, and about 9 o'clock in the evening Robert Carr rode up on horseback. He was at that time in bed. The old man was still around the fire, and he said Carr came over to him and said, 'Get up out of here, and take off my saddle.' He said he got up, and took it off, and went right back to bed, and he heard Carr and the old man, Lannon, talking, and he turned over in bed, and looked down in the direction of where they were, and the next thing he knew anything about was early in the morning,—I believe he stated about 4 o'clock,—when Carr came to him, and says, 'Get up out of there, and get into this wagon and start.' He said the team was hitched up, ready to go. All he did was to get up, load his bed up, throw it into the wagon, and, just about the time he was ready to go, he said Carr picked up a watch, and pitched it over in the wagon bed, and Carr said, 'Go on; don't stop;' and he said he started at that. Then there was a whole lot of talk about his stopping at the grocery store,'' etc. The man Carr was a witness in this case, and corroborated the above testimony as to what the defendant testified to before the justice in Springer. He also testified that he did not know the man, Lannon; that he had never seen him; that he was not on the Trinchera upon the night of the killing, and had never seen the defendant with Lannon. The testimony also shows that the defendant, after his arrest, had been searched a number of times; that upon the first search there was found upon him some pass books and some money; that upon the search made about two months after his arrest there was found upon him a watch.

This was the testimony of the territory. The defendant testified in his own behalf substantially as follows: That his right name was Fred Faulkner, but that his mother had been married a second time to a man by the name of Woods, and that he went by that name; that he was in the insane asylum at Pueblo,

Colorado, during the latter part of July, 1891, but had escaped, and come to Trinidad in search of work; that there he met and became acquainted with Bob Carr, and agreed with him to go out as a cook for a surveying party; that upon the same day, but later, he, the defendant, went down the street, "and I seen him talking to the old man, and" afterward "he gave me an introduction to him, but not by the name he is here called;" that he remained a day or two longer in Trinidad, visiting the Salvation Army, of which he was a member, when Carr started him and the old man off, telling him he would come later, but, as he owed his hotel bill, that he didn't wish to give the appearance of leaving just then; that about 8 or 9 o'clock at night he overtook them at their camp; that Carr ordered him to get up and feed his horse, which he did; that being very tired, he immediately returned to his bed, and fell into a sound sleep; that the next morning Carr woke him up, told him to put the things into the wagon, and that they would start; that he asked Carr where the driver was, and that he replied, "Drive on; he is all right;" that he was going to ask him some other questions, but that he pulled out his gun, and told him to "go on;" that he drove ahead to Folsom, where he obtained something to eat by purchasing it, Carr at the time being on the outer edge of the town; that, at Folsom, Carr told him to drive on, and that he would be right after him, and if he stopped he was liable "to get one of these; and he pulled his gun and showed it to me;" that he kept on the road until arrested. He gave a somewhat different version of the arrest by the deputy sheriff, and denied point-blank all the testimony given by the territory's witnesses as to his various admissions. He stated that he had been in an asylum in Illinois, Missouri, and Colorado, and that he was at times subject to fits. This was the substance of his evidence upon the direct examination. His cross-exam-

ination, while modifying the direct but little, was far from disingenuous. He refused to answer pertinent questions, and persisted in evading answers, and was constantly making endeavors, by evasions and impertinent remarks, to withdraw the attention of the counsel from the question propounded. If the evidence then was all rightfully before the jury, we can not see how that body could escape the conclusion, beyond a reasonable doubt, that there had been committed a most foul murder, and that this defendant was the author of such crime, unless they had refused to believe the witnesses for the territory, and had placed implicit credence in the story of the defendant. The jury have said by their verdict that he was guilty. They are the judges of the credibilty of the witnesses, and we see nothing upon this record to convince us that their judgment upon that question was not absolutely correct, even had we the authority to inquire into it. Were there, then, errors in the actions of the trial judge in the refusing of a continuance, in the admission of testimony, or in the giving of instructions? The defendant makes eight assignments of errors, and, at the risk of making this opinion somewhat lengthy, but justifying it by the gravity of the case, we will consider those errors seriatim.

1. The defendant filed a motion based upon affidavit for continuance upon the very day set for his trial, which day was the thirteenth day of the term. By section 2051, Complied Laws, 1884, all

CONTINUANCE: section 2051, Compiled Laws.

motions for continuance must be made "on the second day of the term, if it is certain that it will have to be made before the trial, and as soon thereafter as it becomes certain that it will so need to be made, and shall not be allowed to be made when the cause is called for trial, except for cause which could not, by reasonable diligence, have been before that time discovered; and, if made after the

second day of the term, the affidavit must state facts constituting an excuse for the delay in making it." There have been no facts stated showing any excuse for the necessity of filing this motion upon the day of the trial. It is true that the defendant's counsel made an affidavit, which had for its purpose to show that due diligence had been used in the effort to obtain certain testimony, and for an excuse for making the application upon the day of trial, but it was insufficient. The reason given for not earlier making the application was "because he hoped to obtain the necessary testimony." That statement, if anything, was a conclusion, and not a fact such as the law contemplates. The facts which raised the hope in the counsel's mind that he would have been able to obtain the testimony should have been the basis for his excuse for the delay in not sooner filing his application for a continuance. If, however, there was real merit in the affidavit for the continuance, in a matter of so great gravity as this, we would not hesitate to inquire fully into the application, and grant a new trial, if there had been an abuse of discretion on the part of the trial court, or had he overlooked the mandatory condition of the statute applicable to continuances. The law unquestionably is that, if the legal requirements in the application for the continuance have been fully met, irrespective of the truth of the facts alleged, the continuance must be granted, unless the opposite side will admit that the witnesses, if present, would testify to the facts stated in the application. Section 2050, Compiled Laws, 1884; Territory v. Kinney, 3 N. M. 369. But this application is legally insufficient. In his affidavit the defendant says that he

CONTINUANCE: affidavit: section 2049, Compiled Laws.

has been unable to obtain testimony to show that his mind has for nearly all his life been unbalanced, and that he had been in three different insane asylums; but he nowhere states any facts which show reasonable grounds of

belief that such testimony will be forth coming at the
next term of the court, nor efforts, constituting due
diligence, which he had used to obtain such evidence at
the term at which he was tried. He further avers that
he has been unable to learn of the address of his rela-
tives, in order to get their assistance in the way of
sufficient money to obtain a copy of the records of the
asylums, showing that he has been incarcerated there,
as aforesaid, and such other testimony as may be nec-
essary to show that affiant has at times been wholly
insane and irresponsible for his acts.'' This averment
is clearly insufficient: First. There is no showing
wherein the copies of the record of the asylums would
be legally competent. Second. The statement as to
the "other testimony" is not such a statement of
facts as could legally go to the jury, and hence the ter-
ritory could not admit it. Then, too, he only seeks to
show by that testimony that he was insane at times,
but not at or about the time when the alleged crime was
committed, and yet, as we understand the rule, the
testimony as to insanity must go to show that condi-
tion of mind at the time of the commission of the act.
He further avers that he is unable to go to trial because
he did not have present important and material wit-
nesses, to wit, the keepers and wardens of the before
mentioned asylums, who would testify to the above
facts as to his insanity. This is insufficient, if for no
other reason than that there are no facts as to his insan-
ity alleged, to which these witnesses could testify. The
statute provides that the application for a continuance
must state "what particular facts, as distinguished
from legal conclusions, the affiant believes the witness
will prove, and that the affiant believes them to be
true, and that he knows of no other witnesses by whom
such facts can be duly proved.'' Section 2049, Com-
piled Laws, 1884. He has failed to distinguish between
fact and conclusion,—in truth, he has utterly failed to

allege any fact which could legally be of any assistance to him. There was, therefore, no error upon the part of the court in refusing the continuance.

2. It is alleged that there was error in refusing the defendant compulsory process, by which to compel the attendance of witnesses upon his behalf. The defendant was certainly entitled to this right and, if he has been refused the right, it was error. Section 673, Compiled Laws, 1884. The record presented to us must be presumed to be absolutely correct, in the absence of any showing that it is wrong; and there is a further presumption, in the absence of a showing to the contrary, that the action of the trial court was correct in all matters. When the defendant relies upon an alleged irregularity of the court or jury, the burden is upon him, not only to show it, but also to show he was prejudiced thereby. Thomason v. Territory, 4 N. M. 150–154, and cases cited. Now there is no showing that this defendant ever asked for any process; hence it can not be supposed that it was refused him. This right does not contemplate that the government must go to the accused, and ask him what he desires; present him with process already signed in blank for him to fill up as he might wish, and then have the record show that fact. It simply means that if the accused wishes the aid of the government, then all the legal agencies are at his command, but that he must ask for them. This he has failed to do. The presumption then certainly is that he did not wish those agencies, and he can not, therefore, complain.

*Compulsory process for attendance of witnesses: presumption.*

3. It is alleged that there was error in the failure of the court to fully instruct as to the law of the case. The statute provides that it is the duty of the judge in all cases to instruct the jury as to the law of the case. Section 2054, Comp. Laws, 1884. It is contended that, as there are

*Murder: instructions: section 2054, Compiled Laws.*

three degrees of murder under our statute, it is the duty of the court to give instruction as to all of them; and as in this case the court only instructed as to the first degree, there was error. But this contention is manifestly wrong under the authorities. "The law of the case" has reference solely to the case as made by the evidence. If there was any evidence before the jury upon the second or third degrees, then it would have been the duty of the court to have instructed as to those degrees. But a careful reading of that evidence, as presented to us by the record, fails to show any evidence upon those degrees. Either the evidence proved murder in the first degree or nothing; hence the instruction of the court was correct. Thomason v. Territory, 4 N. M. (Gil.) 154; Territory v. Nichols, 3 N. M. (Gil.) 103; Territory v. Romine, 2 N. M. 114: Territory v. Romero, Id. 474; 9 Am. and Eng. Encyclopedia Law, 741, and cases cited. The counsel seemed to urge that it was the duty of the court to instruct upon all the degrees of murder, because the jury might have thought there was something in the case bearing upon those degrees, although not deducible from the fair import of the evidence. But an answer to this is that the jury ought never to enter into speculation as to what might be. They must not, either in favor of life or against it, read into words proof which in no fair sense can be legally found in them, or to imagine that there may have been a condition of facts lurking behind them; and it would be erroneous for a court to encourage the jury in speculating or imagining a possible state of facts by giving instructions which are not warranted by a fair consideration of the whole of the evidence. The court in this particular has a duty upon it to listen to the evidence, and to determine, not what facts are proven, but, if the facts testified to are proven, to what degree or degrees may they legally apply. This he does, of

course, at his peril of making a mistake. Territory v. Young, 2 N. M. 93.

4. It is assigned as error that the court in its ninth instruction upon the question of justifiable and excusable homicide stated the law incorrectly. The fault complained of is, not that the law so far as given was not correct, but that it became erroneous by failing to state the whole law upon the subject. In other words, that the court erred in naming certain classes of persons, the legal defense of whom is justifiable, and in not naming other classes mentioned in the statute. If, however, the evidence only applied to one class of persons, then it was only necessary to instruct as to that class. This upon the reason of the rule as applicable to instruction as to degrees of crime. But a satisfactory answer to this assignment of error is that there is not one iota of evidence, to which any instruction upon self-defense could apply, found in the record. If, then, there was any error at all, it was not that assigned, but it was in giving any instruction whatever. Such error, however, could not have confused or misled the jury, and in any case was favorable to the plaintiff in error, and he can not complain.

5. The fifth assignment of error is as to various instructions upon certain law propositions in the case.

MURDER: plea, insanity: burden of proof.

The first is as to the defense of insanity. The only testimony upon the question of insanity was that of the defendant, and was, in substance, that he had been in three different asylums for various lengths of time, but he nowhere testifies that while in them he was insane. He testified that after he left one of the asylums his mind "was all right at spells," by which he meant, unquestionably, that it was all right except when he had spells; for, in reply to an interrogatory as to the character of these "spells," he says they were "fits." In

reply to the question, "Have you been subject to these spells since [leaving the Missouri asylum], and about how often?" he answered: "Sometimes I have two or three a month, sometimes more, and sometimes only one." There was no evidence that after leaving the asylum at Pueblo up to the time of trial, which was fully eight months, that he had ever had an attack of these fits. He testified as to his actions previous to and at the time of the killing, and never intimates that during that time he had any attack of these fits, though he had sworn in his affidavit for a continuance that he believed that at the time the crime was committed he was insane. With this evidence before the jury, the court gave the following instruction as to the defense of insanity: "You are instructed that the law presumes every person of mature years to be sane, and responsible for his acts, until the contrary be shown by the evidence; and, when insanity is relied upon as a defense to an alleged criminal act, the burden of proof is upon the defendant to show, by the evidence, that he was affected by insanity, or by some insane delusion, at the time of the act, to such an extent that he did not know what he was doing, or that he did not know that what he was doing was wrong; and in this case, if you believe from the evidence, beyond a reasonable doubt, that the defendant killed the deceased in manner and form as charged in the indictment, then, to establish a defense on the ground of insanity, the burden of proof is on the defendant to show by the evidence that at the time of committing the act he was laboring under such a defect of mind and reason that he did not know the nature of the act he was doing, or, if he did know, that he did not know that he was doing what was wrong." The objection to this instruction is that it wrongly states the law as to the burden of proof when the defense of insanity is an issue. The defendant contends that sanity is just as

essential as any other necessary ingredient of a crime, and that, as the territory has the burden to prove all the material allegations of a crime, and sanity being one of them, it is therefore necessary for it to assume the burden of proving it. But this is not an exact statement of the law. Every person accused of crime is presumed to be sane, and that legal presumption is all the proof required of the territory under the burden. If nothing is advanced by the defense upon the issue, the fact of sanity is proven beyond a reasonable doubt. If, however, the defense insists upon insanity as an excuse for the defendant's action, then "the burden of proof is upon him to establish it." 2 Thomp. Trials, sec. 2524. This statement of the law does not mean, though, that the burden is of such a nature as to necessitate a proof beyond a reasonable doubt, nor necessarily that the proof must be by a preponderance of evidence, though some courts have so held; but it means that when the defense of insanity is set up the burden is upon the defendant to submit sufficient evidence to at least produce in the minds of the jury a reasonable doubt of the guilt of the accused, under the instructions, that he must have been insane when he committed the deed. Id. The instruction in question simply enunciates this rule. This holding in no way alters the general proposition that the burden is upon the territory to prove the crime beyond a reasonable doubt. When the territory rests its case, it has done so, or the defendant must be acquitted. When the defendant then says, "I was insane when I did the act," he has the burden of proving sufficient to introduce a reasonable doubt as to that fact, and the jury should be so instructed that they may not fall in the error of thinking that the mere suggestion of insanity is sufficient to acquit, because they have been previously instructed that the territory has the burden of proving the material allegations beyond a reasonable

doubt. Thompson says in his work upon Trials, at the section above quoted, that "the defense of insanity, from its very nature, confesses the commission of the act;" and this is the law. But the defendant insists that he did not commit the act; hence, from his standpoint, the defense was not in the case; but whether under the evidence as to the alleged insanity, or the position taken by the defendant, we think that there was no error in the instruction of the court.

6. This case was one which rested upon purely circumstantial evidence, and, among others, the court gave the following instruction: "You are further instructed that the rule of law requiring you to be satisfied of the defendant's guilt beyond a reasonable doubt, in order to warrant a conviction, does not require that you should be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the defendant's guilt. It is sufficient to warrant such conviction if, taking the testimony altogether, you are satisfied beyond a reasonable doubt that the defendant is guilty." This instruction is given in Sack. Instruct. Juries, 483, and is held to be correct in Houser v. State, 58 Ga. 78; Jarrell v. State, 58 Ind. 293; State v. Hayden, 45 Iowa, 11; and Bressler v. People, 117 Ill. 422. Upon the other hand, very respectable courts have held that the portion, at least, of the above instruction above quoted, as to each link not requiring to be proven, is, if not bad law, at least very liable to mislead a jury, and it ought not to be so given. Marion v. State, 16 Neb. 349; Clare v. People, 9 Colo. 122; Leonard v. Territory, 2 Wash. T. 381. In the Colorado case, supra, the court did not have the testimony before it, and it is not quite certain that the latter portion of the above instruction—"It is sufficient to warrant such conviction, if, taking the testimony altogether, you are satisfied beyond a reasonable doubt

*MURDER: reasonable doubt: instructions.*

that the defendant is guilty"—was the instruction which they passed upon. The danger in such an instruction is that the jury will understand the term "link" to mean the same as a "material fact," and possibly overlook the proof as to such fact, which would be clearly wrong. But the jury had been fully instructed as to the necessity of believing beyond a reasonable doubt that each and every material fact had been proven, and they could not have been in any way misled by this instruction, viewing it in the light of the evidence before us in the record. We are of the opinion that, under the evidence in this case, there was no error in this instruction.

The court instructed the jury that the defendant was a competent witness, and in judging of his credibility, and the weight to be given to his testimony, "the fact that such witness is specially interested in the result of the action or of your deliberations may be taken into account by you, and you may give such testimony only such weight and credit as you think it fairly entitled to receive under all the circumstances of the case, and in view of the special interest of such witness in the result of the action." It is insisted that this casts discredit upon the defendant's testimony, and is an invasion of the province of the jury. To this view of the instruction we can not assent. As a statement of a principle by which to gauge the weight of the testimony and the credibility of the witness it is correct, and the only possible error which could be assigned would be in the specific mentioning of the defendant. But it nowhere says the jury must disregard the testimony, or that they may do so, or what weight they should give to his testimony, and it is hard to see wherein he was prejudiced by the mere mention of the fact that his testimony must be judged by the same rule as that for other witnesses. In the case of Ter-

TESTIMONY of defendant: instructions.

ritory v. Romine, this court, while discountenancing the instruction, says that the following in a murder trial is not error: "It will be proper for you to consider the fact that he is the defendant, and that the greatest possible temptation is presented to him to testify in his own favor, if he is really guilty." 2 N. M. 114. We think it better, while giving the law so as to fully cover the testimony of the defendant, to refrain as far as possible from calling direct attention to his evidence; for it is conceivable that there may be cases in which it might prejudice the jury. In this case it was hardly possible that such could have occurred. By another instruction the jury were told that, "if you believe from the evidence that the defendant, as a witness, * * * has willfully sworn falsely in this trial as to any matter or thing material to the issue in this case, then you are at liberty to disregard his entire testimony, except so far as it has been corroborated by other credible evidence, or by facts and circumstances proved on the trial." It is urged that this is erroneous, because it is not the law in civil cases, much less in criminal, that the testimony of a party must be corroborated in order to be believed by the jury. While this is true, we fail to see the applicability of the objection to the instruction before us. The court does not say that the defendant's testimony, as such, must be corroborated, but, if they believe that he has willfully sworn falsely to material matters, that they are at liberty to disregard that portion unless corroborated. The instruction was favorable to him rather than otherwise, as it protected testimony favorable to him from other witnesses, even though he might have discredited it by his false swearing, if the jury found that he had sworn falsely. That this is a correct instruction is fully sustained by adjudicated cases. Some judges have directed juries to disregard such testimony, and the appellate tribunals have said it was error. In this

case, however, the judge gave them the law, and said they were at liberty to disregard it unless corroborated. Jones v. People, 2 Colo. 351; Mead v. McGraw, 19 Ohio St. 55; Senter v. Carr, 15 N. H. 351; 10 Crim. Law Mag., p. 167, sec. 10.

Upon the question of impeaching witnesses the judge charged the jury that one of the modes of so doing was to show that the witness sought to be impeached had, at other times and places, made statements at variance with those made by him upon the witness stand, and if they believed that the defendant, as to any material matter, had done so "then it is your exclusive province to determine to what extent such fact tends to impeach either his memory or his credibility, or detracts from the weight which ought otherwise to be given to his testimony;" and in a second instruction upon the same point he charged them that if from the evidence they believed that the defendant had so made statements as to material matters at other times and places at variance to what he stated upon the witness stand, "then you are instructed that these facts tend to impeach either the recollection or truthfulness of the witness, and you should consider these facts in estimating the weight which ought to be given to his testimony." This is alleged to be error solely upon the ground of its prejudicing the defendant as discrediting his testimony, but in no place does the trial judge assume or intimate that contradictory statements have been made as a fact, while there was evidence that such statements had been made. If, now, the jury believed that contradictory statements had been so made as a fact, then it was only proper that they should be told how to deal with that fact, and what its legal consequences were. That the law was properly stated hardly admits of question. "The credit of a witness may also be impeached by proof that he has

*Margin note: IMPEACHMENT of witness: instructions.*

made statements out of court contrary to what he has testified at the trial." But these must be as to matters relevant to the issue. 1 Greenl. Ev., sec. 462. The only possible objection which might be urged to this instruction is the calling the jury's attention to the defendant's testimony. But under the principle of the decision of Territory v. Romine, 2 N. M. 114, we can not see that the defendant can have suffered.

We have thus briefly considered all the errors assigned as to the instructions, and have failed to find any error which calls for a reversal. The instructions, as a whole, were fair, just, and favorable to the defendant. They were quite lengthy, but at all times kept before the jury's mind the leading rule of criminal evidence, that they could not find the defendant guilty unless they believed beyond a reasonable doubt that all the material allegations which the territory was bound to prove had been proven; and, after a careful and earnest consideration of the evidence, we are unable to see how a jury could honestly and intelligently come to any other conclusion than it did. We can not refrain from saying that we think that too often hypercritical constructions are placed upon instructions by counsel, in the earnestness of their contention, which could not have entered into the minds of the jurors. Language often, by its form of expression, grows in the mind of a person who studies it with a purpose of seeing just what is in it, until the idea evolved is far different than that which its author or those to whom it was addressed imagined. Jurors do not usually enter into a critical analysis of the language of an instruction, but are guided by the first impression which accompanies it, and that impression, in the most cases, is the one which the judge intended that they should have. In the instructions complained of upon the ground that they tended to discredit the defendant's testimony, because he was directly named,

this is evident.   The judge never had the thought of so doing, as it would have been improper, and it is not supposable that it had any such impression upon the jurors.

7.   A number of witnesses testified to certain admissions or confessions which the defendant made while in the custody of the officers.   They were made to the officers.   It is claimed that it was error to admit them because made under duress.   But there was no evidence whatever that they were so made.   The defendant when upon the stand did not claim that they were made under duress.   His testimony was that they were never made; that they were pure inventions. That was a question for the jury.   That they were made voluntarily, if made, must be conceded, and hence they were admissible.   Whart. Crim. Ev., sec. 649; 1 Greenl. Ev., sec. 219, et seq.

8.   It is lastly urged that it was error in the court refusing a new trial upon the showing of newly dis-
covered evidence.   The defendant made an affidavit in which he stated that he had discovered important, relevant, and material evidence in his behalf, in that two women would testify "that, two days before the killing of Lannon, Carr visited them, and stated to them that James Lannon had lots of money, and that he, Carr, was going to get it before the end of three days."   This testimony, if produced, would only tend to contradict Carr, and nothing more.   The testimony of Carr could be dispensed with, and yet leave sufficient to justify the finding of the jury.   Saying nothing as to the very questionable sufficiency of the affidavit as to allegations of diligence in finding this evidence, and the truth as to the other allegations as shown by the defendant's own evidence, yet we think the showing is not sufficient to authorize us to disturb the verdict. The granting of a new trial is a matter resting largely

NEWLY discovered evidence: new trial.

in the discretion of the trial court, and ought not to be disturbed, unless clearly erroneous, or unless, in a criminal case, the court feels that the evidence produced would change the verdict. 16 Am. & Eng. Encyclopedia of Law, 503. It is true that in a criminal case the appellate court will examine more carefully the use of the discretion made by the trial court, and will and ought to reverse its holding when there is the least valid presumption that a new trial would result differently than the one appealed from. But we believe beyond a reasonable doubt, upon the evidence in this case, that the result would not be different in a second trial, even with the new evidence. There might be one chance or more, based upon the law of probabilities, in the defendant's favor, but we can not overlook that right and justice which the good order of the territory demands for its protection, by leaving the plain path of the law, to allow an accused to speculate upon the probabilities even in the case where the judgment is death. The defendant had a fair and impartial trial, his rights were duly protected by court and counsel, the jury acted without precipitation or any evidence of passion, and their verdict was unquestionably right and just. The many errors assigned have not been considered with the thoroughness which they might have been, for, on account of the day fixed for the execution being so near, and there being no legal way of changing the day, it was necessary to arrive at a conclusion as soon as possible, taking into consideration the importance of the case and the need of arriving at a correct conclusion. It has only been attempted to announce the law as a fact upon the various points raised, not to elaborate the arguments from which the law issued.

There being no error found in the action of the trial court, the judgment will be affirmed.

McFIE, LEE, and FREEMAN, JJ., concur.