514 P.2d 603

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Charles WILSON, Defendant-Appellant.**

No. 9686.

Supreme Court of New Mexico.

Sept. 21, 1973.

Neil E. Weinbrenner, Las Cruces, for defendant-appellant on appeal.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

STEPHENSON, Justice.

Defendant-Appellant (defendant) was charged and convicted of the first degree murder of Mr. Joe Cardon.

An appeal was not timely taken and diverse proceedings were had in respect to defendant's efforts to appeal in the court below, and in the United States District Court for the District of New Mexico. It is unnecessary to detail these matters inasmuch as we consider the appeal on its merits.

On an evening in December, 1970, defendant entered the liquor store owned by Mr. Cardon in Las Cruces. Mr. Cardon's wife, his son, Bobby, then fourteen years of age, and a six year old daughter were also present. Mrs. Cardon noticed defendant come into the store. She got up to wait on him, but was told by her husband that he would do it. She sat down and took no further notice until she heard a loud slam and saw the defendant back of the counter, with a drawn gun, opening the cash register. She testified that the defendant told them all to stand back and that "this is a stick up" or words to that effect. While he was rifling the cash register, Mr. Cardon grabbed him and a struggle ensued, during which both parties fell to the floor. Several shots were fired wildly about the store from the defendant's pistol, one narrowly missing Bobby Cardon. One of the bullets struck Mr. Cardon and fatally wounded him. During the struggle the defendant was shot in the chest by Bobby Cardon with his father's pistol. Mr. Cardon was pronounced dead on arrival at the hospital.

Defendant entered a plea of not guilty by reason of insanity. His witness in support of his plea was Dr. James Lewis, a neurologist who is Director of the Convulsive Disorder Epilepsy Clinic at the University of New Mexico. Dr. Lewis testified that on the basis of his examination he was of the opinion that the defendant suffered from psychomotor epilepsy; that if the defendant was suffering from such a seizure at the time of the shooting he would not be in control of his faculties and would be unable to appreciate the nature and consequences of his acts. He also testified that, in his opinion, there was a fifty percent probability that Wilson was suffering from such seizure at the time of the shooting.

Dr. Lewis' testimony was qualified in certain aspects, if not impeached, upon cross examination. The state offered various rebuttal witnesses to show that the defendant may have been faking a seizure. There was also testimony from Dr. Welsh, a Las Cruces psychiatrist, that he did not think the defendant was suffering from any kind of epileptic seizure at the time of the shooting.

Defendant first contends that the trial court erred in refusing to give a tendered instruction on insanity. The argument centers upon whether the state had the burden of proof on the issue of insanity.

The defendant's tendered instruction was as follows:

"I instruct you that the defendant in this case has entered a plea of not guilty, and under this plea, the defendant can defend on the basis of an insane state of mind of the defendant existing at the time of the commission of the alleged offense herein. This crime involves a guilty intent and cannot be successfully prosecuted against said defendant who is insane at the time of the commission of said alleged crime because an insane person does not have the capacity to form a mental intent.

"In connection with said defense of insanity, the defendant has produced evidence that he was insane at the time of the alleged crime. While ordinarily, it is presumed that every person is sane, in this case, you cannot rely on this pre-

554

sumption because the defendant has introduced sufficient evidence of insanity to rebut said presumption. Consequently I instruct you that the burden of proof is upon the State to prove beyond a reasonable doubt that at the time of the alleged offense, the defendant was sane, and if the State fails to do so, then the defendant is entitled to an acquittal by reason of insanity as to the crime charged against him. Also, if upon a consideration of the whole evidence, there is a reasonable doubt as to whether the defendant was sane or insane at the time of the act charged against him, then the defendant is entitled to the benefit of the doubt and I instruct you to acquit him on the grounds of insanity as to the crime charged against him."

Defendant made proper objection to the court's failure to so charge the jury.

The court instructed the jury that it was the sole judge of the facts; that it should not single out one instruction alone as stating the law, but must consider the instructions as a whole; that the state had the burden of establishing the defendant's guilt beyond a reasonable doubt; that the defendant was presumed to be innocent which presumption remains with him throughout the trial until his guilt is established beyond a reasonable doubt; that they must find the defendant sane as a prerequisite to a verdict that he was guilty of murder in the first degree and, among other instructions normal to such cases, instructed upon the defense of insanity.

The jury was provided with a form of verdict appropriate to finding the defendant insane at the time of the commission of the acts charged and declaring him acquitted upon the ground of such insanity.

Defendant made no objection to any instruction given by the court and we will hence not detail them further.

A number of New Mexico cases have dealt with the defense of insanity vis-a-vis applicable presumptions and burdens. Typical of such cases and those to which we will make reference are State v. Torres, 82 N.M. 422, 483 P.2d 303 (1971); State v. Moore, 42 N.M. 135, 76 P.2d 19 (1938); State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (1936), and State v. James, 83 N.M. 263, 490 P.2d 1336 (Ct.App.1971).

Roy, supra, 40 N.M. at 404, 60 P.2d at 650, mentions the presumption of sanity, and is clear authority for the proposition that:

"* * * the burden of proof is upon the state to prove that the defendant is sane beyond a reasonable doubt."

In Moore, supra, this court speaking through Justice Zinn, who had authored Roy, supra, as well, spoke of the procedural aspects of the defense of insanity in the following terms:

"The law on the subject in issue has already been enunciated in this jurisdiction. See Faulkner v. Territory, 6 N.M. 464, 30 P. 905; Territory v. McNabb, 16 N.M. 625, 120 P. 907. We said in the case of State v. Roy, 40 N.M. 397, 60 P. 2d 646, 650, 110 A.L.R. 1, as follows: 'When the defendant has put in evidence reasonably tending to show him insane, the problem is then to determine whether it is sufficient to take the case to the jury. This is a question for the court to determine. Therefore, when all the evidence is in, if there has been adduced competent evidence reasonably tending to support the fact of insanity urged by the defendant as a defensive issue in the case, it is the duty of the court to instruct on the question of insanity.' It is clear that in this jurisdiction the presumption, that one accused of crime was sane at the time the alleged crime was committed, serves merely the function of casting upon the defendant the necessity of going forward with evidence tending to show that he was insane at the time the alleged crime was committed. If the state has offered evidence which tends to show that the defendant was insane at that time, the defendant is even relieved of that burden. *Until evidence is offered and received at the trial which tends to show that the defendant was in-*

*sane at the time of the alleged crime, the state may rely upon the presumption of sanity and need not offer evidence to establish that fact* [Emphasis added]. In the absence of evidence, sanity is assumed to exist without evidence of its existence. When, however, evidence is received which tends to show that the accused was insane at the time of the alleged offense, then, and in such case, an issue is raised as to the mental condition of the accused, and it becomes *the duty of the jury* to determine such issue from the evidence independent of the presumption of sanity. If the jury, however, disbelieves the evidence, then the presumption stands. The court fully understood the law and instructed the jury accordingly." State v. Moore, supra, 42 N.M. at 154, 155, 76 P.2d at 30, 31.

We agree with Justice Zinn's analysis but recognize that the mode of expression in the emphasized portion has engendered argument.

■ Except in a case where the evidence of insanity is so clear as to require a directed verdict, i. e., the presumption of sanity is rebutted as a matter of law, the presumption abides with the state throughout the case and continues even after the defendant has made a sufficient showing to procure insanity instructions. For this reason we do not entirely agree with the statement that is emphasized because it could be inferred from it that the presumption ceases to operate when evidence tending to show insanity is received. Justice Zinn's assertion that "if the jury disbelieves the evidence [evidence tending to show accused was insane at the time of the alleged offense], then the presumption stands," clearly suggests that the presumption of sanity does not disappear and is not extinguished by evidence tending to show insanity.

■ In this jurisdiction a defendant, who claims to have been insane at the time of the commission of the offense with which he is charged, must offer evidence tending to show his insanity at the time in order to create a jury question upon this issue, unless a jury question on this issue is raised by evidence adduced by the state which tends to show such insanity. This was what Justice Zinn meant when he said that the presumption of sanity casts upon the defendant the necessity of going forward with the evidence tending to show insanity, and that "if the state has offered evidence which tends to show that he was insane at that time, the defendant is even relieved of that burden." The state, if it chose to do so as a matter of trial tactics and perhaps at some risk of losing the lawsuit, could decline to introduce evidence of sanity in rebuttal to the defendant's evidence of the want thereof. The ultimate decision on the matter is for the jury under proper instructions. State v. Lopez, 80 N.M. 599, 458 P.2d 851 (Ct.App.1969).

■ This was what we had in mind in Torres, supra, 82 N.M. at 424, 483 P.2d at 305, when we said:

"The instructions tendered by the defendant are wrong in that they would place the burden as to the defendant's sanity on the State."

We meant that the state was not required to affirmatively prove sanity but could rather rely on the presumption. But the quoted statement from Torres, supra, as written, is wrong and is overruled. Otherwise Torres, supra, would be irreconcilable with James, supra, notwithstanding the statement of the author of the latter case to the contrary. We have no quarrel with what is said in James, supra, although it fails to make clear that the presumption of sanity continues through the case.

■■ If error is to be claimed concerning a court's failure to give a requested instruction to a jury, such instruction must be a proper statement of the law. State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966). The tendered instruction here was erroneous in that it would have told the jury that the presumption of sanity could not be relied upon because the defendant had introduced evidence of insanity.

■ Defendant's next point has to do with a written statement by Mary Lou Cardon, decedent's sister. The witness testified that she had made a statement a few days after the crime; that she had not had an opportunity to look at the statement before she testified; and that she had not used it to refresh her memory.

The following then occurred:

"By Mr. Moyers: Your Honor, at this time I would request an opportunity to look at the statement of Mary Lou Cardon that was taken by the police.

"By Mr. Williams: Your Honor, I don't have a written statement of Mary Lou Cardon and I have not seen it.

"By the Court: If he hasn't got it, he hasn't seen it, that is the District Attorney.

"By Mr. Moyers: Your Honor, I have one more question.

"By the Court: Very well."

Defendant argues that the trial court erred in failing "to make further inquiry as to the whereabouts of the statement and to require its production by the police officer or other person who has it for the examination by the defense counsel."

We know of no obligation on the part of the court to seek out the statement. It was the obligation of the defendant to pursue the matter. From the quoted colloquy, one would suppose that the matter of the statement had been abandoned, and such an assumption on the part of the trial judge would have been entirely justified. Since defense counsel made no further request for the production of the alleged statement from anyone who might have possession, we can say that no objection or precise ruling was made on the matter involved and, therefore, the trial judge did not err with respect to the non-production of the statement. State v. Miller, 79 N.M. 117, 440 P.2d 792 (1968); State v. Reynolds, 79 N.M. 195, 441 P.2d 235 (Ct.App.1968); Supreme Court Rule 20(1)(2) [§ 21–2–1(20)(1)(2), N.M.S.A.1953].

■ Finally defendant contends that there was no substantial evidence to support the verdict of the jury that the defendant was sane at the time of the offense and that for this reason the trial court erred in denying defendant's motion for directed verdict. We will not review all of the evidence bearing on the question of sanity. From what we have said at the outset of this opinion, it is clear that defendant's sanity was a disputed issue of fact for the determination of the jury under proper instructions, and no error in the instructions was reserved for review. In State v. Rushing, 85 N.M. 540, 544, 514 P. 2d 297, 301 (1973) we said, quoting from State v. Polsky, 82 N.M. 393, 398, 482 P.2d 257, 262 (Ct.App.1971):

" 'In determining whether there is substantial evidence to support a conviction, the appellate court must view the evidence in the light most favorable to the State, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. State v. Parker, 80 N.M. 551, 458 P.2d 803 (Ct.App.1969). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. State v. Encee, 79 N. M. 23, 439 P.2d 240 (Ct.App.1968). The fact that there were conflicts in the evidence does not make the State's evidence insubstantial. State v. Mora, 81 N.M. 631, 471 P.2d 201 (Ct.App.1970). The appellate court may not properly substitute its judgment for that of the jury as to credibility of the witnesses or the weight to be given the evidence. Gallegos v. Wilkerson, 79 N.M. 549, 445 P.2d 970 (1968); State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967); State v. Tafoya, 80 N.M. 494, 458 P.2d 98 (Ct. App.1969); Rein v. Dvoracek, 79 N.M. 410, 444 P.2d 595 (Ct.App.1968).' "

The judgment of the trial court is affirmed.

It is so ordered.

OMAN and MONTOYA, JJ., concur.