521 P.2d 1040

STATE of New Mexico, Plaintiff-Appellee,

v.

Lorenzo CHAVEZ, Defendant-Appellant.

No. 1338.

Court of Appeals of New Mexico.

Feb. 27, 1974.

Certiorari Denied April 1, 1974.

Chester H. Walter, Jr., Chief Public Defender, Pedro G. Rael, Special Asst. Public Defender, Santa Fe, for appellant.

David L. Norvell, Atty. Gen., George A. Morrison, Special Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Convicted of murder in the second degree, defendant appeals. Section 40A–2–1(B), N.M.S.A.1953 (2d Repl.Vol. 6). The issues concern: (1) insanity as a matter of law; (2) exhibits to the jury during its deliberation; and (3) validity of imprisonment for costs.

*Insanity as a matter of law.*

■ At the close of the evidence, defendant moved for a directed verdict on the basis that he was insane at the time of commission of the offense. There is no issue as to the legal definition of insanity. See State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908 (1959); State v. White, 58 N.M. 324, 270 P.2d 727 (1954). The claim is that defendant was insane as a matter of law. In support of this claim,

defendant would apply the uncontradicted evidence rule stated in Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940).

The contention is based on language in State v. Gardner, 85 N.M. 104, 509 P.2d 871 (1973), cert. denied, 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100 (1973), which states:

"We can accept the proposition, at least guardedly, that cases may arise where, absent evidence to the contrary, the defendant's evidence on the issue of insanity may be so clear and of such overpowering and persuasive force that reasonable minds can move only in the direction of a finding of insanity. In such a case, a court need not hesitate to rule on the issue as a matter of law. . . ."

See also, State v. Wilson, 85 N.M. 552, 514 P.2d 603 (1973).

A defense witness, Dr. Shankel, testified that defendant was insane at the time of the killing. Asserting that Dr. Shankel's evidence is uncontradicted, defendant examines rebuttal evidence of the State, and contends this evidence failed to contradict the testimony of Dr. Shankel. We do not concern ourselves with whether evidence introduced by the State directly contradicted Dr. Shankel's conclusion. Rather, we examine the evidence to determine whether the uncontradicted evidence rule is applicable.

Medler v. Henry, supra, states that the uncontradicted evidence rule does not apply where the facts and circumstances of the case cast reasonable doubt upon the truth or accuracy of the oral testimony. Facts and circumstances casting doubt on the accuracy of Dr. Shankel's conclusion are as follows:

(a) Dr. Shankel, a psychiatrist, testified that psychiatry is not "a precise science . . . I have no way of knowing with certainty what his mental condition was." His testimony of insanity was the doctor's "considered opinion."

(b) Dr. Shankel testified that defendant suffered from a mental illness known as

schizophrenia. The schizophrenia was described as chronic, paranoid type. Dr. Shankel, and Dr. Rosenstein, who testified for the State, agreed that a diagnosis of schizophrenia does not necessarily mean that the schizophrenic is criminally insane.

(c) According to Dr. Shankel, defendant stated he had no memory of the events surrounding the killing. There is evidence casting doubt on defendant's lack of memory. Dr. Shankel testified that whether defendant had lied about his lack of memory would not be pertinent; that it made no difference whether or not defendant remembered the crime. Dr. Rosenstein stated that amnesia was "one of the elements that you use in coming to your conclusion." Dr. Rosenstein also testified that if a defendant were unable to give any recollection of the events which had transpired, this lack of memory affects the examiner's ability to come to a conclusion as to sanity or insanity.

(d) Dr. Shankel referred to defendant's hallucinations in his first report and stated the hallucinations had ceased in a subsequent report. Dr. Shankel testified that whether or not defendant had had hallucinatory experiences made no difference on the question of legal insanity. Dr. Shankel also testified that his diagnosis of schizophrenia was not based on hallucinations. Dr. Rosenstein approached the legal definition of insanity on the basis that the definition involved a psychosis and testified that hallucinations were primarily symptoms of psychosis.

(e) Dr. Rosenstein testified that if the legal definition of insanity equated with psychosis, then Dr. Shankel's diagnosis of schizophrenia did not fit within the legal definition. "By definition, the schizophrenia does not preclude the ability to preceive [sic] reality with some accuracy." Whether a chronic schizophrenic was capable of understanding the nature and quality of his actions "would depend on his mental state at any particular time."

In light of the foregoing circumstances, the uncontradicted evidence rule was not applicable. In the light of the foregoing, Dr. Shankel's testimony was neither so clear nor of such persuasive force that it required a ruling of law that defendant was insane. State v. Gardner, supra. The trial court did not err in denying the motion for a directed verdict; it correctly submitted the insanity issue to the jury.

*Exhibits to jury during its deliberation.*

■ While deliberating, the jury requested "to see the Doctors [sic] reports that were introduced as evidence." The record indicates all exhibits, except clothing and a mannequin, were sent to the jury. Defendant claims this was error, relying on State v. Ross, 85 N.M. 176, 510 P.2d 109 (Ct.App.1973).

*Ross,* supra, considered the question of sending exhibits to the jury during its deliberation under the law existing prior to the effective date of the Rules of Criminal Procedure. This case is subject to the Rules of Criminal Procedure.

Section 41–23–42(c), N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973) states: "Upon its request to review any exhibit during its deliberations, the jury shall be furnished all exhibits received in evidence." Under this rule, all exhibits, received in evidence, are to be furnished to the jury if the jury requests any exhibit.

Defendant does not complaint of the failure to send the clothing and mannequin to the jury. His complaint concerns the exhibits that were furnished. Since § 41–23–42(c), supra, authorized sending those exhibits to the jury, there was no error in doing so.

*Validity of imprisonment for costs.*

■ Defendant was sentenced to not less than ten nor more than fifty years in the penitentiary. Section 40A–2–1, supra; § 40A–29–3(B), N.M.S.A.1953 (2d Repl. Vol. 6). He was also ordered to pay all court costs incurred as a result of the trial. Section 41–13–4, N.M.S.A.1953 (2d Repl. Vol. 6). The district court clerk certified costs of $4,050.86. The amended commit-

ment directs penitentiary officials to confine defendant until the sentence is served and the costs are paid.

The showing in this record is that defendant is an indigent. On the basis of this indigency, defendant claims that he will be imprisoned, pursuant to the amended commitment, because he is unable to pay the costs assessed against him.

Our statutes provide for imprisonment for costs.

Section 42–2–9, N.M.S.A.1953 (2d Repl. Vol. 6) deals with commitments to prison for nonpayment of costs. Subdivision (A) states a prisoner will be credited with $5.00 "a day in reduction thereof for each day or portion of a day of imprisonment." Subdivision (B) states that if the person in custody makes an affidavit that he has no property out of which to pay the costs, he is not to be retained in custody longer than three months.

Section 42–1–60, N.M.S.A.1953 (2d Repl.Vol. 6) states that convicts sentenced to the penitentiary who have costs attached to their sentence shall not be required to serve more than thirty days for such costs.

The parties agree that § 42–1–60, supra, is the statute applicable to defendant. The State contends the sentence and commitment is valid and the only corrective action needed is to make it clear that the commitment to prison for costs is subject to the provisions of § 42–1–60, supra. Defendant asserts that imprisonment, based solely on his inability to pay costs, deprives him of equal protection of the law. We agree with defendant.

Williams v. Illinois, 399 U.S. 235, 90 S. Ct. 2018, 26 L.Ed.2d 586 (1970) states: "By making the maximum confinement contingent upon one's ability to pay, the State has visited different consequences on two categories of persons since the result is to make incarceration in excess of the statutory maximum applicable only to those without the requisite resources to satisfy the money portion of the judgment." In holding such different consequences violate equal protection of the law, Williams v. Illinois, supra, states: "once the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment beyond the statutory maximum solely by reason of their indigency." See Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

We do not hold that alternatives may not be employed by the State in seeking to collect court costs. That issue is not before us. See Tate v. Short, supra; Williams v. Illinois, supra. Our holding is that defendant may not be imprisoned beyond the maximum statutory sentence because of his inability to pay the costs assessed against him.

What is the effect of this holding in this case? The penitentiary sentence of not less than ten nor more than fifty years is valid. The provision in the judgment and sentence, directing defendant to pay costs, is valid. The provision in the amended commitment directing penitentiary officials to confine defendant until the costs are paid is invalid.

The judgment and sentence is affirmed. The amended commitment is set aside. The trial court is instructed to issue an amended commitment consistent with this opinion.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.