536 P.2d 1088

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Danny Jack DOSIER, Louis Lee Butler, and Joe Edward Seate, Defendants-Appellants.**

**No. 1641.**

Court of Appeals of New Mexico.
March 26, 1975.

Rehearing Denied May 5, 1975.

Certiorari Denied May 28, 1975.

Charles J. Crider, Marchiondo & Berry, P.A., Albuquerque, for appellant Butler.

Samuel A. Francis, Albuquerque, for appellant Dosier.

Ronald M. Higginbotham, Hunker, Fedric & Higginbotham, P.A., Roswell, for appellants Dosier and Seate.

Toney Anaya, Atty. Gen., Santa Fe, Andrea Buzzard, Jay F. Rosenthal, Asst. Atty. Gen., for appellee.

## OPINION

WOOD, Chief Judge.

Defendants appeal their convictions of fraud and attempted fraud. Sections 40A–16–6 and 40A–28–1, N.M.S.A.1953 (2d Repl. Vol. 6). The issues concern: (1) failure to arraign, (2) admission of defendants' statements, (3) sufficiency of the evidence, (4) instructions, and (5) merger of offenses.

*Failure to Arraign*

In a pretrial stipulation, Butler waived the time limitations for arraignment and agreed that the arraignment could be held on or before the trial date. No arraignment was held. When the case was called for trial, Butler announced ready for trial and proceeded to trial. By doing so, he effectively waived his right to be arraigned. State v. Parker, 80 N.M. 551, 458 P.2d 803 (Ct.App.1969).

**34**

### Admission of Defendants' Statements

■ (a) By pretrial motion, Butler and Dosier moved to suppress statements made by them. They claim the trial court erred in failing to hold an evidentiary hearing on this motion. There is nothing indicating the motion was ever brought to the attention of the trial court. See § 41–23–33(g), N.M.S.A.1953 (2d Repl. Vol. 6, Supp.1973). The trial court did not err in failing to conduct a hearing on the motion when the motion was never brought to its attention. State v. Madrigal, 85 N.M. 496, 513 P.2d 1278 (Ct.App.1973); Compare State v. Soliz, 79 N.M. 263, 442 P.2d 575 (1968).

■ (b) All of the defendants contend that it was error for the trial court to admit various oral and written statements made by defendants after they were in the custody of the police. They contend: (1) the written statements were tainted by promises of leniency and thus, not voluntary; (2) the oral statements were obtained by deception and subterfuge; (3) the oral statements were obtained without an express waiver of the privilege against self-incrimination and the right to counsel; and (4) the admission of statements by Dosier and Seate denied Butler his right to cross-examination. None of these issues were raised at trial. They cannot be raised on appeal for the first time. State v. Williams, 83 N.M. 477, 493 P.2d 962 (Ct.App.1972); State v. Sexton, 82 N.M. 648, 485 P.2d 982 (Ct.App.1971); § 21–12–11, N.M.S.A.1953 (Interim Supp. 1974).

### Sufficiency of the Evidence

■ The events from which the charges arose took place in Roswell and Artesia. Dosier and Butler, acting throughout as strangers to one another, enticed Harwell into a game of chance. The game, identified as three card monte, involved the use of two red queens and one black queen from a deck of cards. These three queens were turned face down and Harwell was to pick the black one. Harwell claimed he never was gambling, but he lost around $150.00 to Butler over a short period of time.

The final wager was for $20,000.00 which Harwell supposedly won. Before Butler would pay the $20,000.00 or return the $150.00, he demanded to see $20,000.00 of Harwell's money so he could be sure that Harwell could have paid had he lost. Unable to cash a check for that amount in Roswell, Harwell drove to Artesia accompanied by Dosier. When Harwell's bank in Artesia refused to let him have $20,000.-00 in cash without a police escort, Dosier disappeared. Later all three defendants were apprehended in a car travelling north from Artesia.

"Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." Section 40A–16–6, supra. Proof that a crime was committed cannot be established solely by the extrajudicial confession of the accused. State v. Nance, 77 N.M. 39, 419 P.2d 242 (1966), cert. denied, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967); State v. Gruender, 83 N.M. 327, 491 P.2d 1082 (Ct.App. 1971). Butler asserts that if his extrajudicial statement is excluded (the statements of Dosier and Seate were not admitted as evidence against Butler), the only testimony of Butler's fraud is the testimony of Harwell. Butler asserts Harwell's testimony shows only that Harwell gambled with Butler and lost $150.00.

Butler does not accurately describe Harwell's testimony. Harwell's evidence is that Butler made the initial contact with Harwell, that Butler brought Dosier into the picture, that Butler flashed two rolls of bills, that Dosier initiated the game of cards, that the first two or three times Dosier showed Harwell the black queen, that Harwell then "missed" the black queen in a game with a $500.00 pot, that Butler got hold of $150.00 from Harwell in making up the $500.00, that Butler also got Harwell's watch and credit cards, that Butler initiat-

ed the $20,000.00 bet, that Butler refused to give the $150.00 back until Harwell showed his $20,000.00.

Harwell's testimony is sufficient to show that the crime of fraud was committed. State v. Gruender, supra.

As to the attempted fraud, Butler asserts that: (1) apart from his extrajudicial statement, there is no proof that the crime of attempted fraud was committed; and (2) there is no proof of an overt act in part execution of the intent to commit the crime.

Again we disagree. Butler initiated the $20,000.00 bet; Butler insisted that Harwell show his $20,000.00; Dosier went with Harwell to the Roswell bank in his unsuccessful attempt to get the money while Butler and Seate waited for them; Dosier went with Harwell to Artesia; Seate said: "I'll bring Butler behind you"; Dosier went into the Artesia bank with Harwell and stood outside the rail while Harwell talked to the banker; when Harwell told Dosier the banker would not let Harwell have the money without a police escort, Dosier disappeared.

The evidence of an attempted fraud and an overt act in part execution of that intent to defraud does not rest only on Harwell's testimony. The Artesia banker testified that when Harwell told him a story about winning a bunch of money but had to show his own ability to pay off, the banker refused to let Harwell have the money without a police escort. It was the banker who called the police.

This testimony is sufficient to show the crime of attempted fraud was committed, State v. Gruender, supra. This testimony is sufficient to show an overt act in part execution of the intent to defraud. State v. Lopez, 81 N.M. 107, 464 P.2d 23 (Ct. App.1969).

There being evidence that crimes were in fact committed, that evidence together with Butler's extrajudicial statement is substantial evidence that Butler was guilty of both crimes.

*Instructions*

■ (a) The jury was instructed on circumstantial evidence and on flight as a fact to be considered with other circumstances. Butler asserts there is no evidence to support these instructions. He misreads the record; there is evidence to support both instructions.

■ (b) One requested instruction defined gambling as making a bet. Another requested instruction defined a bet. A third requested instruction would have told the jury that if Harwell "was engaged in a game of chance and was making a bet, then you must find that the defendants were not guilty of fraud . . . ." All defendants contend the trial court erred in refusing these requested instructions because there was evidence of gambling and because these requested instructions stated their theory of the case.

We agree there was evidence of gambling; we do not decide whether the requested instructions were proper theory of the case instructions. See State v. Mireles, 84 N.M. 146, 500 P.2d 431 (Ct.App.1972).

The first two requests would have defined terms used in the third request. Unless the third request should have been given, there was no error in refusing requests which defined terms not otherwise used.

The third request would have told the jury that if Harwell was gambling the defendants must be found not guilty of fraud. Section 40A–16–6, supra, does not exempt fraud perpetrated while gambling. The request being an incorrect statement of law was properly refused. State v. Wilson, 85 N.M. 552, 514 P.2d 603 (1973).

■ (c) Butler contends the trial court failed to "adequately" instruct the jury on the issue of criminal intent. He recognizes that as to both offenses the trial court instructed substantially in the language of the statutes. He claims that the statutory language does not set forth the requisite intent. He is mistaken.

Fraud is defined in § 40A–16–6, supra, as the intentional misappropriation or tak-

ing of anything of value by means of fraudulent conduct. "To do an act fraudulently is to do it with intent to cheat and defraud." State v. Probert, 19 N.M. 13, 140 P. 1108 (1914). Thus, in State v. Gregg, 83 N.M. 397, 492 P.2d 1260 (Ct. App.1972), it was referred to as fraudulent intent. Because an intent to cheat and defraud is required, § 40A–16–6, supra, is a specific intent crime and the language of the statute sets forth the requisite intent.

An attempt under § 40A–28–1, supra, requires an "intent to commit a felony". This is a specific intent crime. State v. Foster, 87 N.M. 155, 530 P.2d 949 (Ct. App.1974). The statutory language states this requisite intent. Compare State v. Gonzales, 86 N.M. 556, 525 P.2d 916 (Ct. App.1974).

■ Butler also seems to contend that in addition to instructions on specific intent the jury should have been instructed on the general criminal intent of conscious wrongdoing. "When a statute requires a specific intent, the instructions need not be concerned with general criminal intent." State v. Gonzales, supra.

■ (d) In instructing as to the material allegations of both offenses, the fraud and the attempted fraud, the trial court used the words "fraudulent conduct". See § 40A–16–6, supra. Butler complains because "fraudulent conduct" was not defined in the instructions. Relying on State v. Jones, 85 N.M. 426, 512 P.2d 1262 (Ct. App.1973), he asserts "fraudulent conduct" is a word of art susceptible to different meanings and thus, failure to define those words was jurisdictional error. Butler does not suggest any different meanings.

Absent a clearly expressed legislative intent requiring otherwise, "fraudulent conduct" is to be given its usual, ordinary meaning. State v. Moss, 83 N.M. 42, 487 P.2d 1347 (Ct.App.1971). There is no legislative intent expressed in § 40A–16–6, supra, to prevent application of the usual, ordinary meaning. The ordinary meaning of "fraudulent conduct" is conduct based on fraud. The ordinary meaning of "fraud" is "an instance or act of trickery or deceit, especially when involving misrepresentation". Webster's Third New International Dictionary, Unabridged (1966).

Because the ordinary meaning applies, there was no jurisdictional error in failing to define "fraudulent conduct". If Butler desired those words to be defined, he should have submitted a requested instruction. Section 41–23–41(g), N.M.S.A.1953 (2d Repl. Vol., Supp.1973).

*Merger of Offenses*

■ Butler contends he committed but one offense, and not separate offenses. He asserts the sequence of events shows only one transaction, a continuous act inspired by the same criminal intent, that the same facts must be relied on to prove "either charge." He claims the two offenses charged have merged, and to sentence him for two offenses is double punishment. See State v. Ranne, 80 N.M. 188, 453 P.2d 209 (Ct.App.1969).

Butler's argument is predicated on State v. Quintana, 69 N.M. 51, 364 P.2d 120 (1961). *Quintana* states "this rule" is stated in Commonwealth ex rel. Moszczynski v. Ashe, 343 Pa. 102, 21 A.2d 920 (1941). The quotation in *Quintana* from *Ashe* concludes: " 'When one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both.* * * *' " Similarly, State v. Martinez, 77 N.M. 745, 427 P.2d 260 (1967) states:

"The test of whether one criminal offense has merged in another is not, as defendant contends, whether the two criminal acts are successive steps in the same transaction but whether one offense necessarily involves the other."

State v. Maestas, 87 N.M. 6, 528 P.2d 650 (Ct.App.1974) is not to the contrary. *Maestas* did not involve merger; it involved collateral estoppel to bar a second trial. However, even if *Maestas* was applicable, the test utilized in *Maestas* would

not benefit Butler. That test was whether the first trial necessarily or actually determined issues raised in the second trial. In this case, trial on the fraud charge did not necessarily or actually determine the issues involved in the attempted fraud charge.

Returning to the test stated in State v. Martinez, supra, the offense of fraud involving $150.00 of Harwell's money does not necessarily involve the attempt to defraud Harwell of $20,000.00. There was no merger.

The judgments and sentences are affirmed as to each defendant.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

I concur in the opinion of the Court.

Defendant Butler contends that the trial court failed to instruct the jury sufficiently on criminal intent, even though the jury was instructed in the language of the statute. New Mexico law on instructions as to intent has been in a state of confusion and flux since State v. Bachicha, 84 N.M. 397, 503 P.2d 1175 (Ct.App.1972), in which this Court held that an instruction in the language of the statute was not sufficient as to criminal intent.

One of the most pervasive problems for the Bench and Bar in New Mexico in recent years has been dealing with intent as an element of various crimes. The confusion and frustration in this area can be seen in a series of opinions (majority, concurring and dissenting) in the Court of Appeals. Thompson III, M. B. and Gagne, N. L. The Confusing Law of Criminal Intent in New Mexico, 5 N.M.L.Rev. 63 (November, 1974).

In a concurring opinion in State v. Fuentes, 85 N.M. 274, 277, 511 P.2d 760, 761 (Ct.App.1973), I suggested that the problem of specific intent vs. general intent "may be solved if and when the Supreme Court adopts uniform jury instructions in criminal cases."

In a dissenting opinion in State v. Lopez, 84 N.M. 453, 454, 504 P.2d 1086, 1087 (Ct.App.1972), I said:

I further believe that we should abolish the distinction between "specific intent" and "general intent" in instructions in criminal cases.

Now, however, I believe one can see through the "confusion and frustration" in this area of the law. The law on criminal intent may now come to a workable resting place.

The Supreme Court Committee on Uniform Jury Instructions has submitted its final draft. If adopted the problem is solved. The proposed instructions on criminal intent omit "specific intent". There is one instruction which defines criminal intent. It shall be used in every crime requiring criminal intent, except first and second degree murder and voluntary manslaughter.

If the Supreme Court adopts this pattern of criminal intent instructions, confusion and frustration will disappear. Reversals on criminal intent instructions will be laid to rest.