660 P.2d 120

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Perry JACKSON, Defendant-Appellant.**

No. 5758.

Court of Appeals of New Mexico.

Jan. 11, 1983.

Paul G. Bardacke, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

John B. Bigelow, Chief Public Defender, Michael Dickman, Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

DONNELLY, Judge.

The defendant, Perry Jackson, appeals from a judgment and sentence entered following a jury trial wherein he was charged with first degree murder and was convicted of the lesser included offense of second degree murder.

The sole issue raised on appeal is whether the trial court erred in refusing to submit to the jury defendant's requested instruction on the lesser included offense of voluntary manslaughter. We affirm.

On December 20, 1981, at approximately 8:30 p.m. in the evening, defendant and the decedent, Johnny Wayne Hawkins, were both present in a restaurant in Hobbs. Defendant and decedent began arguing and

decedent attempted to leave the establishment, a fight ensued and defendant fatally stabbed the decedent with a knife.

Defendant testified that shortly prior to the stabbing incident he was in the back of the restaurant talking with Melanie Lewis. He stated that he had known decedent for approximately twelve years previously and had never had any problems with him. Defendant testified that decedent had previously shown him a .38 caliber pistol that he owned and that after decedent purchased the gun, he became "chesty," and that defendant attempted to avoid him. A witness, Herman Davis, testified that earlier in the day on December 20, he had seen decedent with a gun in his possession.

Both defendant and Melanie Lewis testified that they were talking together and decedent approached them in the restaurant and asked Lewis if she was "too good to talk to me now or something?" Defendant testified that decedent stated he could take Melanie Lewis away from defendant and cursed him. Defendant asked decedent "Who are you talking to?" And decedent answered he "would blow me away." Defendant testified decedent appeared to have been drinking and looked "glassy-eyed." At the time of the incident, decedent was with two other companions.

One of decedent's friends (Conway Royal) asked decedent if he wanted him to go to decedent's car and get something, and decedent answered "yes" and gave him the car keys. Defendant said he believed Royal had gone after a gun decedent kept in his car. Defendant testified that decedent tried to run out the door and defendant stopped him, fearing he would get a gun and come back and shoot him. Defendant testified that Royal came back from outside and handed decedent the car keys and what appeared to be something else. Defendant testified:

A: Conway Royal walked in between me and Johnny and said . . . 'We'll take care of you,' and he handed those keys back to Johnny with this hand. And I was on the blind side, because he was trying to give him something

else over here with his right hand. He gave him the keys over here. I'm tall enough to see what he had gave him over here. He say, 'We'll take care of him later.' I say, 'No, you take of me now while we got witnesses. You're not going to get me in the dark and blow me away.'

Q: And you saw these keys being handed?

A: Yes, sir, and he was still doing something like this here.

Q: What did you think that was?

A: The .38 that I seen him had at his house.

Another witness, Bernice Jones, testified that from the time defendant and the deceased exchanged angry words until the time of the stabbing occurred approximately five to fifteen minutes elapsed.

A number of witnesses present at the time of the stabbing, testified that after the initial argument erupted between defendant and decedent, decedent tried several times to leave the restaurant and defendant prevented him from doing so. Thereafter, decedent made another attempt to exit and ran toward the front and defendant fatally stabbed him.

*Failure to Instruct on Voluntary Manslaughter*

Defendant's counsel tendered to the court proposed jury instructions on the lesser included offenses of voluntary manslaughter and involuntary manslaughter. The trial court refused the two requested instructions, but did instruct the jury on the lesser included offense of second degree murder.

Defendant asserts that the trial court committed reversible error in refusing to give his tendered instruction on voluntary manslaughter. Defendant has not challenged on appeal, the court's denial of the requested instruction on involuntary manslaughter, nor has defendant challenged in his docketing statement or briefs on appeal, the propriety of any instructions which were in fact given by the court.

As submitted, the form of the defendant's requested jury instruction on volun-

tary manslaughter was not in accord with the current language of N.M.U.J.I.Crim. 2.20, 1978 (1980 Repl.Pamph.), but instead was in the form that the instruction appeared when originally adopted on September 1, 1975. Since the initial promulgation of N.M.U.J.I.Crim. 2.20 (voluntary manslaughter—lesser included offense), the form of the instruction has been amended on three separate occasions. N.M.U.J.I. Crim., 2.20 was amended October 1, 1976, August 1, 1977 and September 1, 1981.

The elements of voluntary manslaughter as stated in N.M.U.J.I.Crim. 2.20, 1978 (1982 Repl.Pamph), are substantively different from those set forth in defendant's proposed instruction. The form of the instruction tendered by defendant provided in part as follows:

> For you to find the defendant guilty of voluntary manslaughter, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant killed Johnny Hawkins.
> 2. *The defendant had an intent to kill or do great bodily harm to Johnny Hawkins.*
> 3. This happened in New Mexico on or about the 20th day of December, 1981. [Emphasis supplied.]

With the adoption of the 1981 Amendment to N.M.U.J.I.Crim. 2.20, the second element of the voluntary manslaughter instruction was modified to read in applicable part:

> 2. The defendant knew that his acts created a strong probability of death or great bodily harm to [name of victim]. . . .

■ Defendant asserts that there was sufficient evidence to support the giving of an instruction on voluntary manslaughter. Although we agree that there was evidence of provocation which would have warranted the trial court's giving of an instruction on voluntary manslaughter as a lesser included offense within the principal offense charged, defendant failed to tender a correct instruction on voluntary manslaughter.

■ Evidence of provocation sufficient to reduce a charge of second degree murder to voluntary manslaughter must be such as would affect the ability to reason and cause a temporary loss of self control in an ordinary person of average disposition. *State v. Reynolds,* 98 N.M. 527, 650 P.2d 811 (1982); *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979). Evidence of a sudden quarrel or heat of passion, tending to show provocation sufficient to negate malice and reduce the degree of felonious homicide from murder to manslaughter is indispensible to prove the offense of voluntary manslaughter. *Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982); *Smith v. State,* 89 N.M. 770, 558 P.2d 39 (1976).

Prior to the amendment by the Supreme Court of N.M.U.J.I. 2.20, in 1981, the legislature by Laws 1980, amended § 30–2–1, N.M.S.A.1978, relating to the crimes of first and second degree murder, to provide that "unless the defendant" is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse, commits murder in the second degree, if in performing the acts which cause the death he *knows that such acts create a strong probability of death or great bodily harm to* that person or another. The above underscored language was subsequently substantially incorporated in the 1981 amendment to N.M.U.J.I.

The final paragraph of defendant's requested instruction on voluntary manslaughter contained language previously included in former N.M.U.J.I.Crim. 2.21, and now stated in N.M.U.J.I.Crim. 2.22, N.M.S. A.1978 (1982 Repl.Pamph.).

As set forth in the use note to U.J.I. 2.21, when an instruction is given on voluntary manslaughter, N.M.U.J.I.Crim. 1.21 defining "great bodily harm," must also be given. Defendant did not tender a proposed instruction on great bodily harm.

Under N.M.R.Crim.P. 41, N.M.S.A.1978 (1980 Repl.Pamph.), the court must instruct the jury upon all questions of law essential for a conviction of the crime or crimes

submitted to the jury. The rule further provides in applicable part:

[F]or the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed.

A defendant is entitled to have his theory of the case submitted to the jury where the evidence supports it. *Sells v. State, supra; State v. Martinez,* 95 N.M. 421, 622 P.2d 1041 (1981); *State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App. 1982), however, in order to premise error on the refusal of the trial court to instruct, the defendant must tender a legally correct instruction on the law. *State v. Casteneda, supra; State v. Barber,* 93 N.M. 782, 606 P.2d 192 (Ct.App.1979); *State v. Dutchover,* 85 N.M. 72, 509 P.2d 264 (Ct.App.1973). Defendant's requested instruction on voluntary manslaughter was not a correct statement of the law. An instruction which is confusing or incorrect is properly refused. *State v. Kraul,* 90 N.M. 314, 563 P.2d 108 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 486 (1977); *State v. Barber, supra.* When a Uniform Instruction is provided for the elements of a crime it is error to alter the instruction. *State v. Curlee,* 98 N.M. 576, 651 P.2d 111 (Ct.App.1982). A decision or ruling of the trial court will be upheld if it is right for any reason. *State v. Beachum,* 83 N.M. 527, 494 P.2d 188 (Ct.App. 1972).

The trial court did not err in the denial of defendant's requested instruction on voluntary manslaughter. The judgment and sentence are affirmed.

IT IS SO ORDERED.

NEAL, J., concurs.

WALTERS, J., dissents.

WALTERS, Chief Judge. (dissenting).

Mindful of the question raised and argued in the briefs of the parties, I am unable to agree with the majority's disposition of this appeal. The issues of an obsolete requested instruction on voluntary manslaughter and an obsolete instruction on second degree murder given by the trial court, were not raised in the briefs of either parties.

The majority opinion agrees that the evidence supported an instruction on voluntary manslaughter. The State's entire brief argues only that the evidence was insufficient to show provocation, and thus the manslaughter instruction was properly refused. The majority hold that defendant's failure to submit a proposed instruction in accordance with language of the 1981 amendment to N.M.U.J.I.Crim. 2.20 is fatal. It overlooks the similar failure of the trial court to instruct the jury on second degree murder according to the language of the 1981 amendment to N.M.U.J.I.Crim. 2.10, N.M.S. A.1978 (1981 Cum.Supp.). It appears conclusively in this case that the parties, and the trial judge, all referred to the outdated uniform instructions in submitting this matter to the jury.

The majority acknowledges that *State v. Curlee,* 98 N.M. 576, 651 P.2d 111 (Ct.App. 1982), requires the uniform jury instruction on the elements of a crime to be given without modification or substitution. If we are to raise, *sua sponte,* the bar of an incorrect proposed instruction to deny this appeal, we should apply the bar consistently and hold that if a jury is instructed wrongly on the elements of the crime for which defendant is convicted, that error is as fatal and as reversible as defendant's error in submitting an incorrect requested instruction on a correct theory of his defense. In such a manner we would be holding the State and the trial judge to the same standards we impose upon defendants.

The trial court is obliged to instruct the jury on the law. N.M.U.J.I.Crim. 1.03, N.M.S.A.1978 (1982 Repl.Pamph.). *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973), unmistakably imposes the burden on the court to correctly instruct the jury. Chief Justice Lujan said, in *State v. Beal,* 55 N.M. 382, 234 P.2d 331 (1951), that "[i]nstructions should not only state the law correctly, but they should be applicable to the case and

give the jury to understand what the law is that is applicable thereto...." Neither the State nor the trial court are entitled to greater consideration of an incorrect, because obsolete, instruction asked—particularly when we decide such questions on our own motion.

Failure to properly instruct on essential elements is jurisdictional and may be raised for the first time on appeal. *Gunzelman, supra.* Noncompliance with the Uniform Jury Instructions is reversible error if the slightest evidence of prejudice to defendant appears. *State v. Gallegos,* 96 N.M. 54, 627 P.2d 1253 (Ct.App.1981). I am persuaded of the extreme prejudice, and basic unfairness, of providing the State's answer to appellant's issue by raising, *sua sponte,* the rule regarding the tender of a legally correct instruction, but refusing to apply, also of our own volition, concomitant rules regarding jurisdiction, due process, or fundamental error, when incorrect instructions are given. *Cf., State v. DeSantos,* 89 N.M. 458, 553 P.2d 1265 (1976); *State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974).

I believe defendant's conviction should be set aside for trial by a jury properly instructed. I, therefore, respectfully dissent.