861 P.2d 954

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eldridge GREEN, Defendant–Appellant.**

No. 20251.

Supreme Court of New Mexico.

Sept. 21, 1993.

Sammy J. Quintana, Chief Public Defender, Sheila Lewis, Appellate Defender, Santa Fe, for appellant.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

BACA, Justice.

Defendant Eldridge Green was convicted of embezzlement and attempting to traffic cocaine after he failed to return $250 to an undercover police officer who, as a part of a police "sting," gave Defendant the money and requested that Defendant purchase cocaine for him. Green appealed his convictions to the Court of Appeals, which, pursuant to NMSA 1978, Section 34–5–14(C) (Repl.Pamp.1990), certified the appeal to this Court to address one issue: Whether the trial court erred by not giving a fraudulent intent instruction for the embezzlement charge. We accepted certification to decide that issue and, because our jurisdiction under Section 34–5–14(C) extends to the entire case, *State v. Orosco*, 113 N.M. 780, 781 & n. 2, 833 P.2d 1146, 1147 & n. 2 (1992), we address the following additional issues: (1) Whether convictions for both embezzlement and attempted trafficking in cocaine violate double jeopardy, and (2) whether substantial evidence supports Defendant's conviction for attempted trafficking in cocaine. For the reasons stated below, we affirm Defendant's conviction for attempted trafficking in cocaine, reverse his conviction for embezzlement, and remand to the district court for a new trial on the embezzlement charge.[1]

## I

The following facts viewed in the light most favorable to sustaining Defendant's conviction, *see State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988), were adduced at Defendant's trial. On the evening of October 14, 1990, Officer Alvidrez of the Clovis police department was involved in an undercover police operation. Alvidrez approached an individual known as "E.G." and discussed the possible purchase of cocaine. Shortly thereafter, E.G. introduced Alvidrez to Defendant for the explained purpose of Alvidrez obtaining cocaine from Defendant. Following their introduction, Alvidrez and Defendant discussed the proposed transaction in Alvidrez's car, Defendant quoted Alvidrez prices for several quantities of cocaine, and Alvidrez agreed to purchase an "eight ball" of cocaine from Defendant for $250. At Defendant's insistence, the two men proceeded to Defendant's apartment so that Defendant could pick up identification that Alvidrez could hold as security to ensure that the transaction would come to fruition.

The two men then drove back to where they had been introduced, an area in Clovis known for its illegal drug transactions. As they arrived on Upsilon Street, Defendant exclaimed "The main man is here. I'm going to need the money." After Alvidrez gave him $250, Defendant exited from Alvidrez's vehicle and walked behind that vehicle to another vehicle. While Alvidrez attempted to make a U-turn, Defendant disappeared. After parking his vehicle and waiting approximately two hours for Defendant to return, Alvidrez drove to Defendant's apartment and was informed that Defendant had not yet returned. Upon returning to Upsilon Street, Alvidrez was unable to locate Defendant.

On the next day, Alvidrez located Defendant at Defendant's apartment. Defendant told Alvidrez that he had been unable to procure the cocaine but reassured Alvidrez that he had "plenty of connections" and that he would be able to purchase the cocaine. Several nights later, Alvidrez again contacted Defendant and requested that

---

1. Our disposition of the issue certified by the Court of Appeals obviates the necessity to address the other two issues raised by Defendant: (1) Whether there is sufficient evidence to support Defendant's embezzlement conviction, and (2) whether the embezzlement statute is unconstitutionally vague or overbroad.

Defendant supply him with either the money or the cocaine. In an attempt to procure cocaine, Alvidrez and Defendant then drove to Defendant's cousin's house. After requesting that Alvidrez remain in the car, Defendant exited from the vehicle and entered the house. Upon his return from the house, Defendant informed Alvidrez that he was unable to obtain any cocaine at that time.

Several weeks later, Alvidrez and Defendant met again. Defendant informed Alvidrez that he was looking for a job and requested that Alvidrez return his driver's license. Defendant told Alvidrez that upon return of the driver's license he would be able to find employment and either return the money or buy and deliver cocaine to Alvidrez. Defendant was subsequently charged with and convicted of embezzlement of $250 and attempted trafficking of cocaine. From these convictions, Defendant appeals.

## II

The crime of embezzlement is a creation of statute that was unknown in the common law. *Territory v. Maxwell*, 2 N.M. 250, 267 (1882). The first statutes prohibiting embezzlement were enacted in England to eliminate a loophole in the larceny statute. 2 Wayne R. LaFave & Austin R. Scott, Jr., *Substantive Criminal Law* § 8.6, at 368 (1986). Because larceny required a trespass in the taking, a person who was lawfully in possession of property of another could not be convicted of larceny if the person converted the property to his or her own use. *Id.* To fill this void, the initial English statutes proscribing embezzlement listed persons, such as bank employees and store clerks, who might have lawful possession of the property of another and allowed such persons to be convicted of embezzlement if they fraudulently converted the property in their lawful possession to their own use. *Id.*

An early version of the New Mexico embezzlement statute, 1882 N.M. Laws, Chapter LII, Section 22, while similar to its English predecessors, was broader than the English statutes because our statute, un-like the English statutes, added "agent" to the list of persons (servants, clerks, and employees) who could be held accountable under the statute. *Maxwell*, 2 N.M. at 258–61. Later versions of our embezzlement statute, *see, e.g.,* NMSA 1915, Section 1543, like those statutes in a majority of American jurisdictions, replaced the list of the types of persons who would be held accountable under the statute with the phrase similar to "a person in lawful possession of the property of another" or to "a person entrusted with the property of another." LaFave & Scott, *supra* § 8.6, at 368–69.

The current version of our statute proscribing embezzlement reads in pertinent part as follows:

> Embezzlement consists of the embezzling or converting to his own use of anything of value, with which he has been entrusted, with fraudulent intent to deprive the owner thereof.
>
> . . . .
>
> Whoever commits embezzlement when the value of the thing embezzled or converted is over one hundred dollars ($100) but not more than two hundred and fifty dollars ($250) is guilty of a misdemeanor.

NMSA 1978, § 30–16–8 (Repl.Pamp.1984). The issue certified to us in this appeal arises out of an alleged discrepancy between the above quoted statute and the instruction as charged to the jury. That jury instruction, which tracks the language of the uniform jury instruction on embezzlement, SCRA 1986, 14–1641, reads as follows:

> For you to find the defendant guilty of embezzlement as charged in Count I, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant was entrusted with $250.00;
>
> 2. The defendant converted this $250.00 to his own use;
>
> 3. At the time he converted this the [sic] $250.00 to his own use, he intended to deprive the owner of his property;

4. This happened in New Mexico on or about the 14th day of October, 1989.

"Converting something to one's own use" means keeping another's property rather than returning it, or using another's property for one's own purpose rather than for the purpose intended by the owner.

Defendant contends that this instruction omits the fraudulent intent element required by Section 30–16–8 and that this omission is contrary to the legislative intent as expressed in the plain language of that section. *See Rutledge v. Fort*, 104 N.M. 7, 9, 715 P.2d 455, 457 (1986), *rev'd sub nom. on other grounds, Reese v. State*, 106 N.M. 505, 745 P.2d 1153 (1987). Defendant argues that under this instruction the non-criminal breach of a sales contract would be punishable as embezzlement. Citing *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991); and *Jackson v. State*, 100 N.M. 487, 672 P.2d 660 (1983), Defendant concludes that this failure to instruct the jury on fraudulent intent, an essential element of embezzlement, mandates reversal even in the absence of a proper defense objection or a proffered correct instruction under the doctrine of fundamental error.

Quoting the committee commentary to SCRA 1986, 14–1641,[2] the State finds nothing deficient with the instruction as given. As the State maintains, the trial court lacked the authority to declare a uniform jury instruction insufficient. *State v. Chavez*, 101 N.M. 136, 139, 679 P.2d 804, 807 (1984). The State further contends that because a uniform jury instruction for embezzlement is provided, the trial court would have erred had it altered that instruction. *State v. Jackson*, 99 N.M. 478, 660 P.2d 120 (Ct.App.), *rev'd on other grounds*, 100 N.M. 487, 672 P.2d 660 (1983). In the event that fraudulent intent is not adequately defined by the given jury instruction as an element of embezzlement, the State raises two points that it contends mandate an affirmance of the trial court.

First, while conceding that the trial court is required to "instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury," SCRA 1986, 5–608(A) (Repl.Pamp.1992), the State asserts that Defendant has not preserved this issue for review because at trial he neither objected to the instruction given nor offered a correct instruction regarding fraudulent intent, SCRA 1986, 5–608(D); *State v. Romero*, 87 N.M. 279, 532 P.2d 208 (Ct.App.1975); *State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (Ct.App.), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983). Second, the State insists that because Defendant failed to preserve the issue by objecting or proffering a correct instruction, his conviction can be reversed only under the doctrine of fundamental error. Because the State finds no miscarriage of justice in Defendant's conviction, it urges us to affirm the conviction.

The outcome of this case turns on whether the uniform jury instruction as given, SCRA 1986, 14–1641, adequately delineates the essential elements of the crime of embezzlement as defined in Section 30–16–8. "In determining what is or is not an essential element of an offense, we begin with the language of the statute itself, seeking of course to give effect to the intent of the legislature." *Osborne*, 111 N.M. at 657–58, 808 P.2d at 627–28 (citations omitted). As quoted above, Section 30–16–8 requires that the embezzler have the "fraudulent intent to deprive the owner" of the owner's property. Consistent with this statutory language, the Court of Appeals has stated that the essential elements of embezzlement are as follows: (1) The defendant was entrusted with the property of another; (2) the defendant converted the property to his or her own use; and (3) in converting the property to his or her own use, the defendant fraudulently intended to deprive the owner of his or her property. *State v. Moss*, 83 N.M. 42, 43–44, 487 P.2d 1347, 1348–49 (Ct.App.1971) (decided under NMSA 1953, § 40A–16–7 (Repl.Vol. 6), the identically worded predecessor to Section

**2.** The committee commentary reads as follows: "Although the statute uses the word 'fraudulent' to modify the intent to deprive, that concept is

not specifically included in the instruction because the concept is adequately included by the other elements."

30–16–8). In a subsequent case, the Court of Appeals found that the intent element of the embezzlement statute requires that "at the time of the conversion of the property, [the] defendant entertained a specific intent to deprive the owner of the property." *State v. Gonzales*, 99 N.M. 734, 735, 663 P.2d 710, 711 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645, *and cert. denied*, 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983).

■ A holding that fraudulent intent is an essential element of the crime of embezzlement is consistent with our interpretation of other statutes requiring fraudulent intent or its functional equivalent as embodied in the corresponding uniform jury instructions. *See Osborne*, 111 N.M. at 658, 808 P.2d at 628 (discussing uniform jury instructions of crimes defined as requiring "unlawfulness"). For example, fraud as defined in NMSA 1978, Section 30–16–6 (Cum.Supp.1992), requires that the defendant have the intent to defraud his or her victim. *State v. Dosier*, 88 N.M. 32, 35, 536 P.2d 1088, 1091 (Ct.App.), *cert. denied*

88 N.M. 28, 536 P.2d 1084 (1975). An essential element of fraud, as stated in the uniform jury instruction for fraud, SCRA 1986, 14–1640, is that the defendant intended to deceive or cheat the victim. Similarly, our statute prohibiting forgery, NMSA 1978, Section 30–16–10 (Repl.Pamp.1984), requires that the defendant have an intent to defraud the victim. The uniform jury instructions for forgery, SCRA 1986, 14–1643 and –1644, state that the intent to injure, deceive, or cheat is an essential element of forgery.[3] These statutes and the corresponding uniform jury instructions illustrate that where fraudulent intent is a statutory element of the offense, our uniform jury instructions follow suit and require that the jury be instructed that the defendant "intended to deceive or cheat" the victim. Accordingly, we hold that fraudulent intent is an essential element of embezzlement as that crime is defined by Section 30–16–8.

■ Having determined that fraudulent intent is an essential element of the crime

**3.** Other uniform jury instructions for corresponding statutes that require an intent to defraud show a similar pattern. *Compare* NMSA 1978, § 30–36–4 (Repl.Pamp.1984) (defining fraud by worthless check to require "intent to defraud"), *with* SCRA 1986, 14–1670 (intent to deceive or cheat the victim is essential element of fraud by worthless check); *compare* NMSA 1978, § 30–16–28 (Repl.Pamp.1984) (defining fraudulent transfer or receipt of a credit card to require "intent to defraud"), *with* SCRA 1986, 14–1683 (intent to deceive or cheat the victim is essential element of fraudulent transfer of a credit card), *and* SCRA 1986, 14–1683 (intent to deceive or cheat the victim is essential element of fraudulent receipt of a credit card); *compare* NMSA 1978, § 30–16–29 (Repl.Pamp.1984) (defining fraudulent taking, receiving or transferring of credit cards to require "intent to defraud"), *with* SCRA 1986, 14–1685 (intent to deceive or cheat the victim is essential element of fraudulent taking, receiving or transferring of credit cards); *compare* NMSA 1978, § 30–16–31 (Repl.Pamp.1984) (defining forgery of a credit card to require "intent to defraud"), *with* SCRA 1986, 14–1687 (intent to deceive or cheat the victim is essential element of forgery of a credit card); *compare* NMSA 1978, § 30–16–32 (Repl.Pamp.1984) (defining fraudulent signing of credit card to require "intent to defraud"), *with* SCRA 1986, 14–1688 (intent to deceive or cheat the victim is essential element of fraudulent signing of a credit card); *compare* NMSA 1978, § 30–16–33 (defining fraudulent use of

credit cards to require "intent to defraud"), *with* SCRA 1986, 14–1689 (intent to deceive or cheat the victim is essential element of fraudulent use of a credit card), *and* SCRA 1986, 14–1690 (intent to deceive or cheat the victim is essential element of fraudulent use of invalid, expired or revoked credit card), *and* SCRA 1986, 14–1691 (intent to deceive or cheat the victim is essential element of fraudulent use of credit card by person representing that he is the cardholder), *and* SCRA 1986, 14–1692 (intent to deceive or cheat the victim is essential element of fraudulent use of credit card without consent of the cardholder); *compare* NMSA 1978, § 30–16–34 (Repl.Pamp.1984) (defining fraudulent acts by merchants or their employees to require "intent to defraud"), *with* SCRA 1986, 14–1693 (intent to deceive or cheat the victim is essential element of fraudulent acts by merchants or their employees), *with* SCRA 1986, 14–1694 (defining fraudulent acts by merchants or their employees to require "intent to defraud"); *compare* NMSA 1978, § 30–16–35 (Repl.Pamp.1984) (defining possession of incomplete credit cards or machinery to require "intent to defraud"), *with* SCRA 1986 14–1695 (intent to deceive or cheat the victim is essential element of possession of incomplete credit cards), *and* SCRA 1986 14–1696 (intent to deceive or cheat the victim is essential element of possession of machinery, plates or other contrivance).

of embezzlement, we now turn to the jury instruction as charged in this case to determine whether this essential element was included in the jury instruction. In accordance with SCRA 1986, 14–1641, the trial court instructed the jury that to convict Defendant of embezzlement, it must find beyond a reasonable doubt that Defendant was entrusted with $250, that Defendant converted the $250 to his own use, and that at the time he converted the $250 to his own use, Defendant intended to deprive Alvidrez of the $250. The instructions also defined the term "converting something to one's own use" as "keeping another's property rather than returning it, or using another's property for one's own purpose rather than for the purpose intended by the owner."

Defendant contends that this instruction is deficient because it omits the statutory element of fraudulent intent and that the instruction can be read to criminalize noncriminal behavior. We agree. In *State v. Prince*, 52 N.M. 15, 189 P.2d 993 (1948), this Court faced an analogous situation to that presented by the instant appeal. In *Prince*, the defendant challenged the constitutionality of the then-existing embezzlement statute, NMSA 1941, Section 41–4519, which read in pertinent part as follows: "Any person being in the possession of the property of another, who shall convert such property to his own use, or dispose of such property in any way not authorized by the owner thereof, or by law, shall be guilty of embezzlement...." The defendant argued that the statute failed to include entrustment and fraudulent conversion as essential elements of embezzlement. *Prince*, 52 N.M. at 18, 189 P.2d at 994. This Court held that that statute violated due process because the statute prohibited innocent conduct as well as illegal conduct. *Id.* at 18–19, 189 P.2d at 995. We cited the following example to illustrate the problem with the statute. If a person was in possession of the property of another but believed that the property was his own and then either sold that property or converted the property to his own use, he could be found guilty of embezzlement. "Under [the statute's] terms there is no defense for

simple conversion, and to make an act, innocent itself, a crime, and criminals of those who might perchance fall within its interdiction, is inconsistent with law." *Id.*

Like the statute at question in *Prince*, the jury instruction challenged in this case could be read to allow the conviction of a defendant for innocent conduct. To convict a defendant of embezzlement under that instruction, the jury need only find that the defendant converted to his own use property of another that was entrusted to him. Under the challenged instruction, as under the statute challenged in *Prince*, a defendant could be convicted of embezzlement for simple conversion. A comparison of this result with the essential elements of our current embezzlement statute shows that the jury instruction as given is deficient. By enacting Section 30–16–8, the legislature did not intend to criminalize innocent behavior because that section by its express terms requires a finding of fraudulent intent.

The State, relying primarily on the committee commentary to UJI Criminal 14–1641, contends that the jury instruction is not deficient. That commentary, citing as authority *State v. Gregg*, 83 N.M. 397, 492 P.2d 1260 (Ct.App.), *cert. denied*, 83 N.M. 562, 494 P.2d 975 (1972), reads as follows: "Although the statute uses the word 'fraudulent' to modify the intent to deprive, that concept is not specifically included in the instruction because the concept is adequately included by the other elements." *Gregg*, however, does not support the committee commentary. In *Gregg*, we did not address the propriety of a jury instruction but rather considered the defendant's challenge to his conviction for embezzlement, which he based on an assertion that the conviction was not supported by substantial evidence. *Id.* at 398, 492 P.2d at 1261. While the evidence in *Gregg* was conflicting, we held that substantial evidence of the defendant's fraudulent intent, though circumstantial, supported the defendant's conviction. *Id.* at 399, 492 P.2d at 1261.

■ In accordance with the above discussion, we hold that the jury instruction giv-

en in the instant case was deficient because it failed to instruct the jury on all of the essential elements required under Section 30–16–8. This holding necessitates further discussion because Defendant concedes that he failed to object to the jury instruction and that he failed to proffer any instruction on the element of fraudulent intent. Both the State and Defendant agree that for Defendant to prevail, we would have to resort to an application of the doctrine of fundamental error. As both the State and Defendant recognize, "[t]he doctrine of fundamental error ... will be invoked by an appellate court only when the question of guilt is so doubtful that it would shock the conscience to permit the verdict to stand, or when the court considers it necessary to avoid a miscarriage of justice." *State v. Ortega,* 112 N.M. 554, 556, 817 P.2d 1196, 1208 (1991).

In a recent case decided by this Court, *State v. Osborne,* 111 N.M. at 663, 808 P.2d at 633, we held that the omission of the word "unlawful" from the jury instruction required reversal of a conviction for criminal sexual contact of a minor (CSCM). The instruction, which was patterned after the CSCM uniform jury instruction, SCRA 1986, 14–921, was deficient because under the statute defining CSCM, NMSA 1978, Section 30–9–13 (Cum.Supp.1990), unlawfulness of the touching was an essential element of the crime. *Osborne,* 111 N.M. at 661, 808 P.2d at 631. We based reversal of the defendant's conviction on two grounds. First, we examined Rule 5–608(A) and held that failure to instruct the jury on all essential elements of the crime was reversible error under that rule. *Osborne,* 111 N.M. at 661–62, 808 P.2d at 631–32. Second, because of the omission of the word "unlawful" from the jury instruction, "we ... have no way of knowing whether the conviction was or was not on the basis that the touching was done 'unlawfully.'" *Id.* at 663, 808 P.2d at 633. We continued "[u]nder these circum-

stances, to permit the conviction to stand would shock the conscience of this Court and constitute a clear miscarriage of justice." *Id.* Thus, we held that the doctrine of fundamental error required reversal of the defendant's conviction.[4] *Id.*

In the instant case, as in *Osborne,* the failure of the trial court to instruct the jury on all of the essential elements of the crime constitutes reversible error under Rule 5–608(A). Accordingly, we reverse Defendant's conviction for embezzlement and remand for a retrial on that charge.

### III

■ Having held that Defendant's conviction for embezzlement should be reversed, we now turn to the issue that he contends mandates reversal of his conviction for attempted trafficking of cocaine, namely, whether that conviction is supported by substantial evidence. Defendant contends that the State failed to prove that he had the requisite intent to traffic cocaine and that the State failed to prove that he committed an act in furtherance of trafficking cocaine. Basing his appeal on this perceived lack of evidence and citing *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967); and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), Defendant invites us to reverse his conviction. In light of the evidence presented at trial and the proper standard of review, we must decline this invitation.

We recently reiterated the standard of review for a challenge to a conviction based on substantial evidence in *State v. Hernandez,* 115 N.M. 6, 846 P.2d 312 (1993). We stated that standard of review as follows:

> Our review consists of determining "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319.

**4.** We note here that an omission of an essential element from a jury instruction does not always require reversal under the doctrine of fundamental error. For example, we held that reversal was not required where there was no dispute that the omitted element was established. *Ortega,* 112 N.M. at 568–69, 817 P.2d at 1210–11, *Orosco,* 113 N.M. at 784, 833 P.2d at 1150; *State v. Hernandez,* 115 N.M. 6, 22–24, 846 P.2d 312, 328–30 (1993).

"Substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Isiah,* 109 N.M. 21, 30, 781 P.2d 293, 302 (1989). We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319. We may not reweigh the evidence nor substitute our judgment for that of the jury. *Id.*

*Hernandez,* 115 N.M. at 26, 846 P.2d at 332. Our inquiry in this appeal, therefore, begins with a review of the essential elements of the crime of attempted trafficking of cocaine and proceeds with a review of the evidence tending to show each element of the crime beyond a reasonable doubt.

■ The inchoate crime of attempt to commit a felony "consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (Repl.Pamp.1984). Attempt thus has two essential elements: An overt act in furtherance of but failing to consummate the goal crime, coupled with the intent to commit the goal crime. Cases interpreting these requirements have required the overt act to be more than mere preparation: "[The overt act] must be in part execution of the intent to commit the [goal] crime. However, slight acts in furtherance of that intent will constitute an attempt." *State v. Trejo,* 83 N.M. 511, 512, 494 P.2d 173, 174 (Ct. App.1972) (and cases cited therein). Attempt is a specific intent crime, *Dosier,* 88 N.M. at 36, 536 P.2d at 1092, and the existence of that intent must be corroborated by objective facts. *State v. Lopez,* 100 N.M. 291, 293, 669 P.2d 1086, 1088 (1983). Specific intent, however, can seldom be proven by direct evidence: "[Intent] must be proved by the reasonable inferences shown by the evidence and the surrounding circumstances. If there are reasonable inferences and sufficient circumstances then the issue of intent becomes a question of fact for the jury." *State v. Ortiz,* 90 N.M. 319, 322, 563 P.2d 113, 116 (Ct.App.1977).

In this case, the goal crime was trafficking in cocaine as proscribed by NMSA 1978, Section 30–31–20(A)(2) (Repl.Pamp. 1989). That section defines "trafficking" as the "distribution, sale, barter or giving away any controlled substance enumerated in Schedules I or II which is a narcotic drug...." *Id.* Cocaine is classified as a Schedule II narcotic by NMSA 1978, Section 30–31–7(A)(1)(d) (Repl.Pamp.1989). A defendant need not have possession of a controlled substance to be convicted of trafficking of that substance: "[I]t is possible for a person to intend to possess a controlled substance and further to intend to distribute that controlled substance without the person actually possessing the controlled substance." *State v. Curry,* 107 N.M. 133, 134, 753 P.2d 1321, 1322 (Ct. App.), *cert. denied,* 107 N.M. 132, 753 P.2d 1320 (1988).

Defendant argues that he lacked the specific intent to traffic cocaine. He points to his uncontroverted testimony that he merely intended to take the money from Alvidrez and that he did not intend to procure cocaine for Alvidrez. In addition, Defendant testified that "he was opposed to drugs" and that he did not associate with drug dealers. Finally, Defendant testified that, because he never intended to procure cocaine for Alvidrez but merely intended to part an easy mark from his money, his transaction with Alvidrez was, in essence, one man's attempt to help fight the war against drugs.

While the jury was free to believe Defendant's self-serving, after-the-fact statements as to his intent, the jury chose instead to believe objective facts that establish that Defendant had the requisite intent to traffic cocaine. That evidence, in the form of testimony by Officer Alvidrez and Detective Ingraham, is as follows. Alvidrez testified that he was introduced to Defendant for the express purpose of purchasing cocaine from Defendant. Alvidrez testified that during their discussion regarding cocaine procurement, Defendant stated that he could deliver an "eight ball" of cocaine to Alvidrez for $250 or one-sixteenth of an ounce for $125. Alvidrez

testified that Defendant told him (Alvidrez) that he (Defendant) had numerous connections and could procure the cocaine. Alvidrez also testified that he gave Defendant $250 for the express purpose of purchasing cocaine. Alvidrez testified that Defendant gave him (Alvidrez) his (Defendant's) driver's license to ensure that the deal would be completed. Finally, Alvidrez testified that Defendant made what appeared to be at least two attempts to procure cocaine for Alvidrez. Testimony of Detective Ingraham confirmed that the prices quoted by Defendant to Alvidrez were within normal street prices, depending on the transaction and purity of the cocaine.

From the evidence outlined above, the jury could reasonably infer that Defendant intended to traffic in cocaine. From the initial conversation between Defendant and Alvidrez and the testimony of Detective Ingraham, the jury could have concluded that Defendant was well-versed in the drug trade and was connected with drug dealers. The jury could infer that by giving Alvidrez his driver's license, Defendant was making a good faith gesture to ensure that the cocaine would be delivered. The jury could infer that by accepting the $250, Defendant intended to procure cocaine for Alvidrez. In addition, the jury could infer that Defendant attempted to procure the cocaine on two separate occasions: (1) on Upsilon Street on the night of their first meeting, and (2) several nights later when Defendant and Alvidrez went to Defendant's cousin's house for the express purpose of procuring cocaine. These reasonable inferences and the surrounding circumstances made the issue of intent a question of fact for the jury. *Ortiz*, 90 N.M. at 322, 563 P.2d at 116. While Defendant presented evidence that, if believed, could negate the element of specific intent, on appeal we neither reweigh the evidence nor substitute our judgment for that of the jury. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. Sufficient objective evidence supports a conclusion that Defendant intended to sell cocaine to Alvidrez.

▮ Defendant also argues that there is no evidence to show an overt act as re-

quired by Section 30–28–1. Citing *State v. Cotton*, 109 N.M. 769, 790 P.2d 1050 (Ct. App.), *cert. denied*, 109 N.M. 751, 790 P.2d 1032 (1990), Defendant contends that there is no evidence that he started to traffic in cocaine. Citing *State v. Grove*, 82 N.M. 679, 486 P.2d 615 (Ct.App.1971); and *State v. Ferguson*, 77 N.M. 441, 423 P.2d 872 (1967), Defendant asserts that "[m]ere presence is not evidence of participation in criminal activity." Defendant contends that the taking of the $250 is not per se an attempt to traffic. Defendant concludes that the second element of attempt, the overt act, is therefore missing.

While we agree with Defendant's assertion that "[m]ere presence [at the location of a crime] is not evidence of participation in criminal activity," we do not agree that the principles stated in *Grove* and *Ferguson* mandate reversal of his conviction. In *Ferguson,* a jury convicted the defendant, Hazel Ferguson, of contributing to the delinquency of minors after she sold beer to one of the minors and then allowed the minors to remain on her premises while they drank the beer. 77 N.M. at 442, 423 P.2d at 873. Evidence in the record indicated that the minor purchased the beer from a third party, who, after receiving the minor's money, went into another room and gave the money to Ferguson. *Id.* We held that substantial evidence supported a conviction of Ferguson, reasoning that "[t]he jury could have logically inferred from the established facts that [Ferguson] did receive the money from the sale of the beer … [and] that [Ferguson] knew of the [minors'] presence and permitted them to remain." *Id.* at 443, 423 P.2d at 874. In *Grove*, a jury convicted the defendant, Guy Grove, of contributing to the delinquency of a minor when a minor smoked marijuana with and negotiated the sale of marijuana to an informer in Grove's house. 82 N.M. at 680–81, 486 P.2d at 616–17. While evidence in the record showed that Grove may have been present in the house when the illicit activities occurred, the evidence failed to show that he was either involved in those activities or that he condoned such activities. *Id.* at 681, 486 P.2d at 617. Because of the lack of that evidence, the Court of Appeals reversed the defendant's conviction, reasoning that "an inference that [Grove] was present when the [minor]

engaged in his marijuana activities is insufficient to sustain [Grove's] conviction...." *Id.*

Taken together, *Grove* and *Ferguson* stand for the proposition that before a conviction can stand, the defendant must be in some manner connected to the crime as charged. The conviction in *Ferguson* was upheld because the jury could properly have determined that Ferguson was the ultimate perpetrator behind the sale of beer to the minor because the evidence reflected that the party who sold the beer to the minor then gave the money to Ferguson. The conviction in *Grove* was reversed because the record was devoid of evidence that tended to show the defendant's involvement in the criminal activity. The instant case is distinguishable from *Grove* because in this case the evidence showed that Defendant, unlike the defendant in *Grove,* was involved in the illegal activities. Here, unlike the defendant in *Grove,* Defendant was an active participant in the proposed drug transaction: Defendant negotiated the deal and accepted payment for the cocaine.

Defendant's reliance on *Cotton* is also misplaced. In that case, the defendant was in jail pending trial for multiple counts of criminal sexual contact of a minor and criminal sexual penetration of a minor. The defendant wrote several letters to his wife requesting that she convince her daughter, the prosecuting witness, to either give testimony favorable to the defendant or to leave the state so that she would be unavailable to testify against the defendant. The letters were intercepted by law enforcement authorities and were never received by the defendant's wife. The defendant was convicted of criminal solicitation and challenged his conviction, contending that the evidence was insufficient to sustain the conviction. *Cotton,* 109 N.M. at 770–71, 790 P.2d at 1051–52. The Court of Appeals reversed the conviction because the evidence was insufficient to establish that the solicitation had been in fact communicated to the person intended to be solicited—defendant's wife—as required by the solicitation statute, NMSA 1978, Section 30–28–3 (Repl.Pamp.1984). *Cotton,* 109 N.M. at 774, 790 P.2d at 1055.

In *Cotton,* the Court of Appeals distinguished the crime of solicitation from the crime of attempt:

> For an attempt to constitute a criminal offense, proof is required both of an intent to commit the proscribed offense and the commission of some overt act in furtherance of the offense attempted. The offenses of solicitation and attempt are analytically distinct in their elements because solicitation, unlike attempt, is in the nature of preparation to commit an offense, rather than an act or acts in furtherance of the offense attempted. Proof of unilateral acts on the part of the defendant of an inducement or request to another that the latter commit a felony is, however, sufficient to establish the crime of solicitation.
>
> ....
>
> As indicated by the committee commentary to [SCRA 1986,] 14–2817, relating to criminal solicitation, the committee found that under Section 30–28–3, "mere solicitation is not enough of an overt act to constitute an attempt." Thus, an attempt requires proof of an overt act to commit the intended criminal act. In contrast, a charge of solicitation is complete when the solicitation to commit the intended felony is made and it is immaterial that the object of the solicitation is not carried out or that no overt steps were in fact taken toward the consummation of the offense.

*Cotton,* 109 N.M. at 773–74, 790 P.2d at 1054–55 (other citations omitted). Defendant cites *Cotton* for the proposition that the evidence in his case fails to show that he committed an overt act as required by Section 30–28–1. While we agree with the Court of Appeals' statements in *Cotton,* we do not agree that the evidence in the instant case is insufficient to show that Defendant committed an overt act in furtherance of the goal crime.

Cases interpreting the overt act element of Section 30–28–1 have required only that the defendant commit a slight act in furtherance of the goal crime. *Trejo,* 83 N.M.

at 512, 494 P.2d at 174. The Court of Appeals elaborated on this element:

> "In order that there may be an attempt to commit a crime, whether statutory or at common law, there must be some overt act in part execution of the intent to commit the crime. The act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory, and it need not be the last proximate act to the consummation of the offense attempted to be perpetrated. However, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparation or solicitation is made. Slight acts done in furtherance of that design will constitute an attempt. No definite rule can be laid down by which an act might be characterized as overt in any particular case. The general principle of law concerning attempts must be applied in each case as nearly as it can with a view to substantial justice."

*State v. Lopez*, 81 N.M. 107, 108, 464 P.2d 23, 24 (Ct.App.1969) (quoting *State v. Bereman*, 177 Kan. 141, 276 P.2d 364, 365 (1954)), *cert. denied*, 81 N.M. 140, 464 P.2d 559 (1970).

In the instant case, the overt act in furtherance of the goal crime of trafficking in cocaine was Defendant's acceptance of $250 from Alvidrez coupled with their prior discussion of the illicit transaction and the subsequent attempts to procure cocaine. The testimony of Alvidrez, recounted above, provides substantial evidence to support a finding that Defendant accepted $250 from Alvidrez for the expressed purpose of procuring cocaine for Alvidrez. This act is more than mere preparation and "stand[s] either as the first or some subsequent step in a direct movement toward the commission of the offense after the preparation or solicitation is made." *Id.* Be-

cause "substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction," *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319, we affirm Defendant's conviction for attempted trafficking in cocaine.

## IV

▮ The final issue that we discuss is whether on remand a trial on embezzlement would violate double jeopardy.[5] Defendant asserts that his conviction for both embezzlement and attempted trafficking of cocaine arose out of unitary conduct. He contends that in enacting statutes proscribing embezzlement and attempted trafficking of cocaine, the legislature did not intend to provide multiple punishment for unitary conduct that violated both statutes. Because embezzlement is a creation of statute, he also maintains that we should apply the rule of lenity and resolve any questions in interpretation in his favor. Finally, citing *State v. Ortiz*, 90 N.M. 319, 563 P.2d 113 (Ct.App.1977), Defendant asserts that his conviction should be overturned because the State failed to charge the offenses in the alternative.

In the leading case in New Mexico on double jeopardy, *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991), we considered the double jeopardy clause in the context of multiple punishments for a unitary act. In a multiple punishment case, "the sole limitation on multiple punishments is legislative intent...." *Id.* at 13, 810 P.2d at 1233. Accordingly, we adopted a two part test, which we phrased as follows:

> The first part of our inquiry asks the question ... whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes. The second part focuses on the statutes at issue to determine whether the legislature intended to create sepa-

---

5. In his brief, Defendant phrased this issue as follows: "Conviction and punishment for both embezzlement and attempted trafficking violates Mr. Green's right to be free from double jeopardy." Because of our reversal of Defen-

dant's embezzlement conviction and the affirmance of his conviction for attempted trafficking of cocaine, we rephrased the issue as stated in the text.

rately punishable offenses. Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial.

*Id.* at 13, 810 P.2d at 1233.

Under the first prong of the test enunciated in *Swafford*, we must determine "whether the conduct underlying the offenses is unitary." *Id.*

The conduct question depends to a large degree on the elements of the charged offense and the facts presented at trial....

If two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred), then it is a fairly simple task to distinguish the acts. Time and space considerations, however, cannot resolve every case and resort must be had to the quality and nature of the acts or to the objects and results involved. Under the first part of the analysis, it must be kept in mind that the task is merely to determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable. If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, inquiry is at an end.

*Id.* at 13–14, 810 P.2d at 1233–34.

In the instant case, an examination of the elements of the charged offenses and the facts presented at trial leads to the conclusion that the conduct violating both statutes was not, and could not be, unitary. The acts of discussing the drug transaction and exchanging money were required to convict on both the attempt to traffic and embezzlement charges. On the one hand, a conviction for attempted trafficking in cocaine requires that Defendant intended to procure and supply cocaine to Alvidrez. *See* Section III, *supra*. A conviction for embezzlement, on the other hand, would require a finding that, at some point in time, Defendant fraudulently intended to deprive Alvidrez of the $250. *See* Section

II, *supra*. Defendant could not have had both intents at the same point in time because they are logically incompatible—they have "different objects and results". *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. Thus, the conduct is not unitary; consequently, our inquiry is at an end. *Id.*

Upon remand and retrial, should the defendant advance his former defense of fraudulent intent at the time of entrustment, the jury must be instructed that it can only find the defendant guilty of embezzlement if it finds that he formed the fraudulent intent to deprive Alvidrez of his $250 *after* the time of entrustment. The judgment of the trial court is affirmed in part and reversed in part. This action is remanded to the trial court for a new trial on the embezzlement charge.

**IT IS SO ORDERED.**

RANSOM, C.J., and FRANCHINI, J., concur.